UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re:                                          Chapter 11

HELLO LIVING DEVELOPER NOSTRAND, LLC,           Case No.   21-22696 (SHL)

                                   Debtor.

------------------------------------------------------------------X

## DEBTOR'S DISCLOSURE STATEMENT UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR

Leo Fox, Esq.
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595 - Telephone
(212)  949-1857 - Facsimile
leo@leofoxlaw.com

***ATTORNEY FOR THE DEBTOR***
***AND DEBTOR-IN-POSSESSION***

Leo\Clients\Nostrand Properties\Hello Living Developer Nostrand LLC\Disclosure Statement\Disclosure Statement V6\3-23-2022

## DEBTOR'S DISCLOSURE STATEMENT
## DATED MARCH 23, 2022

## INTRODUCTION

1.      The above-captioned Debtor[1] submit this Disclosure Statement pursuant to § 1125 of the Bankruptcy Code to its known creditors in order to disclose that information deemed by the Debtor to be material, important, and necessary for the Creditors and holders of equity interest to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan (hereafter the "Plan"), on file with the Bankruptcy Court.   Only "impaired" Creditors, as that term is defined in the Bankruptcy Code, are entitled to vote for the Plan or to reject the Plan.   A full definition of what constitutes impairment is contained in § 1124 of the Bankruptcy Code.   Approval of the adequacy of the information contained in this Disclosure Statement does not constitute any recommendation by the Court as to the merits of the Plan, whether the Creditors should vote for the Plan, or if the Plan should be confirmed.

2.      A copy of the Plan (_Exhibit A_) accompanies this Disclosure Statement, proposed Order approving the Disclosure Statement and Scheduling a Hearing on Confirmation, as well as a Ballot Form for the acceptance or the rejection of the Plan.   The Debtor has set _____, 2022 at __:00 _.m. for a hearing on and final approval of the Disclosure Statement.

3.      As a Creditor, your vote is important.   In order for the Plan to be deemed accepted, members of each impaired Class designated in the Plan that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims of the Class that vote must vote for the Plan. A claim or interest is impaired unless the Plan: (1) leaves unaltered the legal, equitable, and

---

[1] Capitalized terms used herein, if not otherwise defined, shall have the same meaning as defined in the Plan.

contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such

claim or interest to demand or receive accelerated payment of such claim or interest after the

occurrence of a default; (A) cures or provides for a cure subject to Court approval of any such

default that occurred before or after the commencement of the case under this title, other than a

default of a kind specified in § 365 (b)(2) of this title; (B) reinstates the maturity of such claim or

interest as such maturity existed before such default; (C) compensates the holder of such claim or

interest for any damages incurred as a result of any reasonable reliance by such holder on such

contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable,

or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH IS OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.**

**APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT BY THE COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE MERITS OF THE PLAN. THE COURT DOES NOT RENDER ANY OPINION AS TO**

**WHETHER THE PLAN SHOULD BE ACCEPTED OR REJECTED BY CREDITORS.**

**CREDITORS ARE URGED TO READ THE PLAN IN FULL. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS AND SHAREHOLDERS AND INTERESTED PARTIES, AND IT SHOULD BE READ TOGETHER WITH THIS DISCLOSURE STATEMENT SO THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.**

4.    The following summarizes the Classes, the treatment of the Classes and the expected recovery.

| Class | Claim | Claim Amount/ Classification | Treatment | Projected Recovery | Status | Voting Rights |
|---|---|---|---|---|---|---|
| 1 | Secured Claim of 1580 Nostrand Mezz LLC | Asserted $3,00,000 in unpaid principal which is alleged to be $4,500,000 presently (Secured) (Disputed) | This Creditor shall receive monthly principal and interest payments amortized over 30 years at the interest rate of 3.5% annual rate commencing on the Effective Date for four (4) years and then paid a balloon payment of the balance in full satisfaction and settlement of the claim. | 100% of the Allowed Secured claim | Impaired | Entitled to vote |
| 2 | Any Allowed Unsecured claims | Undetermined | Such claims shall be paid, pro rata, in full, with monthly principal payments of $15,000 plus interest at 3.5% interest commencing on or about the Effective Date for nine (9) years in | 100% of the Allowed Unsecured claims | Impaired | Entitled to vote |

4

| | | | full satisfaction and settlement of claims. | | | |
|---|---|---|---|---|---|---|
| 3 | Equity Interests | | The equity holders shall be paid their investments upon the development project under the means provided for in the investment documents with the equity holders. | | | |

## THE REAL PROPERTY

5.    The Debtor owns 100% of the shares of stock of Hello Nostrand LLC ("*Hello Nostrand*").   Hello Nostrand owns and operates real property located at 1580 Nostrand Avenue, Brooklyn, New York (the "*Real Property*").    The shares are secured by a security interest held by 1580 Hello Nostrand Mezz LLC with a secured debt of $3,000,000 principal.    The Real Property is the only asset of the Hello Nostrand.   The Real Property has a disputed Mortgage held by 1580 Nostrand Ave LLC, a first Mortgagee and an affiliate of 1580 Nostrand Mezz LLC (the "*Mortgagee*"), by a number of assignments, asserting a secured claim in the approximate amount of $70,000,000 inclusive of interest (including the $3,000,000 debt owed by the Debtor).

6.    The Debtor has been recently made aware of the fact that the Mortgagee, 1580 Nostrand Ave LLC, transferred its mortgage interest to Nostrand Senior Lender LLC.

## EVENTS LEADING UP TO THE CHAPTER 11 FILING

7.    The Debtor owns 100% of the equity of Hello Nostrand LLC (see *Exhibit B* for a chart of the corpore structure).    The equity interest was scheduled to be foreclosed if a foreclosure sale proceeded as scheduled in December 2021 and the Chapter 11 petition was not filed.    Hello Nostrand purchased the Real Property in 2014 for the purpose of constructing a multi-unit housing

development.    Hello Nostrand started construction in March 2018 and completed the existing building construction in June 2021.    The building presently has a Temporary Certificate of Occupancy.    Hello Nostrand recently entered into a Lease with 1580 Nostrand Management LLC under a ten (10) year Lease at a beginning annual rental of $3,200,000 with annual increases. There exists a parcel of vacant land on the Real Property which adjoins the completed building which, it is anticipated, will be constructed with another multi-unit development.

8.    The events leading up to this Chapter 11 filing arise from the following. As was noted in the filing papers, Hello Nostrand had a long and unsatisfactory relationship with the secured lender, Madison Realty ("*Madison Realty*").

9.    On December 19, 2017, Prophet Capital Asset Management ("*Prophet*"), entered into a commitment with the Hello Nostrand for $63,000,000 construction loan (the "*Loan*") secured by the real property and any improvements.    On June 7, 2019, at a time that the loan was not in default, Prophet assigned the Loan to Madison Realty.    On December 2, 2019, Hello Nostrand requested a payoff from Madison Realty.    For ten (10) weeks, until February 14, 2020, Madison Realty failed to fund the Loan or give a payoff letter.    On February 14, 2020, Madison Realty delivered a payoff letter reflecting a balance due of $47,392,000.    Total borrowings, including interest reserve up until December 2019 of $7,000,000 reflected a balance due of $41,322,000.

10.    On February 14, 2020, Madison Realty also declared the Loan to be in default, retroactively, since July 2019 claiming $6,000,000 in penalties running from July 2019 despite the $1,500,000 in interest reserves which would have kept the Loan current up until mid-November 2019.    Hello Nostrand was not aware of any default where Madison Realty never declared a default prior to February 14, 2020.    In the February 14, 2022 notification, Madison Realty

6

declared that the Hello Nostrand had been in default from July 2019 up until November 1, 2019 and therefore interest had been running at 24% per annum since July 2019.    Madison Realty claimed the default was due to failure to pay interest and treated the interest reserve as cash collateral, thereby accruing default interest at the full default rate then applying the $1,500,000 interest reserve as a credit against the total default interest.    This resulted in depriving Hello Nostrand of credit for the payment of interest as part of the interest reserve which were on deposit which accrued interest and was readily available to Madison Realty.    Madison Realty's calculation of interest defeated the whole purpose of the interest reserve.    This method added $6,000,000 to the "balance".    Hello Nostrand lost an opportunity to refinance the Madison Realty loan as a consequence of this added interest.

11.    On March 2, 2020, Madison Realty sent a corrected letter to Hello Nostrand, reversing Madison Realty's earlier default notice and instead declaring the default as of November 1, 2020 and running default interest from November 1, 2019 up until April 30, 2020 in advance of the March 2020 notice for a total of six (6) months of default.    This left Hello Nostrand with the same sum of $6,000,000 of default interest as before added to the loan now having a balance of $47,352,000.

12.    As a consequence of Madison Realty's refusal to fund a real estate construction loan, no monies were advanced, the project stalled, insurance lapsed, contractor's liens arose and the entire project was endangered.

13.    Hello Nostrand requested a payoff and Madison Realty stated the amount due was $56,000,000.    In June 2021, Hello Nostrand provided a TCO to Madison Realty demonstrating that the building construction was complete.    Thereafter, in August 2021, Madison Realty "repackaged" the loan by (a) granting an additional "Mezzanine Loan" by a Madison Realty

7

affiliate to the Debtor here as owner of the equity interest of Hello Nostrand of $3,000,000 (which was, in any event, part of Madison Realty's commitment obligation under the $63,000,000 Loan) and recalculating the loan default rate, by among other things, capitalizing default interest of $4,350,000 plus charging additional miscellaneous charges such as a $252,000 forbearance fee, which released all of the Debtor's and Hello Nostrand's claims against Madison Realty. The $3,000,000 balance on the loan to the Debtor went to $4,500,000.

14.    The $3,000,000 loan to the Debtor was scheduled to be foreclosed pursuant to a UCC Auction Sale in December 2021. On December 21, 2021, the Debtor filed this Chapter 11 case to stay the foreclosure sale.

## SOURCE OF FUNDS FOR PLAN FEASIBILITY

15.    All plan payments shall come from the assets of Hello Nostrand. Hello Nostrand will then be able to make their payment based on its Lease Income commencing in March 2023 of over $3,200,000 per year. The monthly payment of $20,207 to Class 1 (see Class 1 treatment) and $7,297 to Class 2 (see Class 2 treatment) can be easily met from Hello Nostrand's cash flow. The following are the amounts of the funds necessary for confirmation of the Plan.

| | |
|---|---|
| Leo Fox, Esq., Counsel to the Debtor (§507(a)(1) (net after prior payments) (Administration – Priority) | $100,000 Approximately |

(See *infra* "Implementation of Plan").

16.    The Lease schedule reflecting the rent payable each year to Hello Nostrand by the Tenant (*Exhibit C*) demonstrates that such distributions are feasible. Although Hello Nostrand does not have any other significant expenditure being paid at this point, Hello Nostrand will be able to make these payments even if there arises contingencies to make payments on the entire Loan owed to the Lender. These payments represent a minor amount of the cash flow. The

8

payments being made by this Debtor are being made to the same Lender as the Lender to Hello

Nostrand.   These payments benefit the creditors of the Debtor as well as the creditors of Hello

Nostrand since these payments enable the consistency and stability of the existing management

with expertise to continue and complete the development of the vacant lot project.

## IMPLEMENTATION OF PLAN

17.    The Debtor shall continue with the litigation against the Secured Creditor (Class 1).

18.    The Debtor shall act as Distributing Agent.

19.    The Debtor shall monitor the operation of the Hello Nostrand Real Property.

20.    The litigation with the Secured Creditor will continue until there is a Final Court

Order determining the allowability of the Secured Creditor's claims and priority.

21.    The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor

shall not be required to execute any newly created documents to evidence the Claims, liens or

terms of repayment to the holder of any Allowed Claim. The terms of this Plan will exclusively

govern payments to creditors and any other rights of creditors as against the Debtor and their

property. Furthermore, upon the completion of the payments required under this Plan to the holders

of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed

released and discharged.   The Debtor shall be responsible to effect all transactions to consummate

the provisions.

## DISTRIBUTION PROCEDURES

22.    The distribution should take place to undisputed creditors by the Effective Date.

Distributions shall be made to the Mortgagee upon a Final Order allowing the Mortgagee's claims.

Reserves shall be set for disputed claims.

## SUMMARY OF PLAN

23.    The Plan is composed of a total of three (3) classes consisting of Creditor Classes and an equity holder Class.

24.    ***Class 1***:        The Allowed Secured Claims of 1580 Nostrand Mezz LLC holding a claim alleged to be in the amount of approximately $3,000,000 in unpaid principal which is alleged to be $4,500,000 presently which claim includes prepayment fees, forbearance fees, exit fees, servicing fees and any other charges charged by this creditor (the attorney of Secured Creditor refused to provide a payoff amount for these claims) are the holders of the Allowed Class 1 Claim.

25.    This creditor shall receive monthly principal and interest payments amortized over 30 years at the interest rate of a 3.5% annual rate commencing on the Effective Date in full satisfaction and settlement of the claim. The monthly payments shall continue until paid on or before four (4) years following the Effective Date (the "*Final Installment Date*").    Payments shall come from Lease Income of Hello Nostrand.   The Debtor estimates the monthly payment to be $20,207.   The Debtor shall arrange for a balloon payment of the balance either through Hello Nostrand or investors.

26.    The Debtor shall have the right to prepay the Allowed Class 1 Claim in whole, or in part, at any time following Confirmation, without penalty.   In the event of such prepayment, any and all unearned interest shall be deemed waived.   Upon Confirmation, any and all prepayment premiums and any fees, exit fees or such other requirements set forth in the underlying loan shall also be waived and released.   The Debtor shall pay all of its operating obligations.   The terms of the Plan shall be the exclusive terms relating to the repayment of the Allowed Class 1 Claim. The pre-petition loan documents shall have no force or effect after Confirmation. Upon completion of the payments to the holder for the Allowed Class 1 Claim as required by the Plan

10

and resolution of the disputed claims, Class 1 shall be deemed to have released any and all liens on the Debtor' assets.   To the extent required by the Debtor, upon full payment of its Allowed Class 1 Claim, Class 1 holder shall immediately prepare and file any document necessary to effect a release of its liens on the Debtor's assets.

27.   This Class is impaired and is entitled to vote.

28.   ***Class 2:***      Any Allowed unsecured claims.

29.   Such claims shall be paid, pro rata, in full, with monthly principal payments of $15,000 plus interest at 3.5% interest commencing on or about the Effective Date in full satisfaction and settlement of the claims.   The Debtor estimates the monthly payment to be $7,297 and the repayment period to be 108 months or over nine (9) years.   These payments made be prepaid at the Debtor's option.

30.   This Class is impaired and is entitled to vote.

31.   ***Class 3:***      Equity Interests – shall be the holders of the equity interest of the parent Debtor.

32.   The equity holders shall be paid their investments upon the development project under the means provided for in the investment documents with the equity holders.

33.   This Class is unimpaired and is not entitled to vote.

## UNITED STATES TRUSTEES FEES UNDER 28 U.S.C. § 1930

34.   The Debtor will undertake and be responsible for all payments due to the United States Trustee's office up through Confirmation, and thereafter up through any conversion of the case to Chapter 7 or the dismissal of the case or closing of the case.   These payments shall be paid timely. All United States Trustees fees accrued prior to Confirmation shall be paid at or prior to confirmation.   All subsequent United States Trustee fees shall be timely paid by the Debtor.

11

All reports required by the United States Trustee shall be properly and timely filed.

## ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

35.     All operating unpaid administrative expenses of the Chapter 11 Case fees, the Court appointed professionals for the Debtor who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code for services rendered prior to the Confirmation Date subject to a Fee Application on Notice and Court Order and the fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, are not classified and shall be paid in full on the Effective Date.  The United States Trustee Fees and the professional fees, incurred after confirmation at the same hourly rates and terms shall continue to be paid up through the Closing Date of this Chapter 11 Case.   A reserve may be estimated on the Confirmation Date and instituted for the payment of these fees.   The within professional claims for post-confirmation services may be paid under a different agreement reached with the Debtor prior to Confirmation and may be paid without any Court Order.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

36.     **Time Limit for Objections to Claims**       Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court.   Unless otherwise extended by Order of this Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the latter of sixty (60) days following the Confirmation Date or within thirty (30) days after the filing of such Claim and service a copy of such Claim upon the Debtor as provided for in the Plan.

12

37.    **Resolution of Disputed Claims**        Unless otherwise ordered by this Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days' notice, as between the Debtor and the Creditor of the Claim, who is being objected to.

38.    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of creditors to which the respective holder of an Allowed Claim belongs. Reserves may be maintained.    Such payments and distributions shall be made as soon as practicable after the date that this Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter.    Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimant or as allowed by this Plan.

## THE REORGANIZED DEBTOR

39.    The Debtor shall continue with its corporate status and operate the Debtor's businesses.

40.    The Debtor shall reserve all distributions from disputed claims pending determination that claims become Allowed claims.

41.    The case may be closed after initial payments are made to creditors on the Effective Date and may be re-opened, without any fees, as necessary, to implement the Plan.

## OFFICERS, DIRECTORS, AND MEMBERS

42.    On Confirmation, Eli Karp shall continue to act as Member/Manager and conduct the Debtor's financial and other affairs.    This person is not paid a salary for his work prior to the Chapter 11 filing or subsequently.

13

## THE LIQUIDATION ANALYSIS

43.     The Debtor believes that the only alternative to confirming this Chapter 11 Plan is a conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

44.     The liquidation analysis (*Exhibit D*) assumes that a liquidation sale of the Debtor's assets would result in there being insufficient funds to pay the Secured creditor even if the Secure creditor's claims were allowed much less other junior claims.

45.     The Debtor believes that the Debtor will be able to establish, under the terms of the Plan, that it has met one of the requirements to confirm a Plan, which is that the treatment under the Plan provides creditors with better treatment than such creditors would receive in liquidation or treatment that is no worse than what the creditors would receive in the liquidation.

## EXECUTORY CONTRACTS

46.     There are no executory contracts between the Debtor and any third party.

## TAX IMPLICATIONS

47.     There are no transactions for which a transfer tax is due.

## PREFERENCE AND FRAUDULENT CONVEYANCE ACTIONS

48.     The Debtor has reviewed its books and records and has investigated whether there are any valid causes of action, including proceedings to avoid transfers including, but not limited to, proceedings under 11 U.S.C. §§ 544(b), 547, 548, 549, 550 of the Bankruptcy Code or applicable State Law.   After analyzing the risks and expenses related to the prosecution of and the limited recovery, if any, which would inure to the benefit of the creditors in the event that the Debtor would be successful, and the ability to collect on any judgments obtained, the Debtor determined that it does not intend to institute any causes of action (excluding, however, the making of objections to claims) for preference or fraudulent conveyance, other than as identified herein.

14

## EVENT OF DEFAULT

49.    The occurrence of any of the following shall constitute a default by the Debtor under the Plan with respect to creditors.

a.    If (i) the Debtor default in making payments due under the Plan (and a grace period of ten (10) days after written notice of such default is given by a majority of the holders of the Class in default shall have passed, and unless such default (hereinafter referred to as an "*Event of Default*") has been waived in accordance with the term herein; (ii) the Debtor breaches any of the covenants contained herein after ten (10) days written notice by a creditor to the Debtor prior to payment due under the Plan; (iii) the Debtor seeks relief under any Federal or State Statute (other than the Debtor' present Chapter 11 Case); (iv) or a receiver; liquidator, custodian or trustee is appointed for substantially all of the property of the Debtor prior to completion of the payment due.

b.    Upon the occurrence of an Event of Default, any creditor shall notify the Debtor, and with the exception of any monetary default on account of payment, the Debtor shall have ten (10) business days from the date of the sending of such notice to cure such breach.   With respect to a breach for non-payment, the Debtor shall have a cure period of twenty-five (25) business days.   In the event the Debtor fails to cure such breach within the prescribed periods, the Debtor shall be deemed to have defaulted on the terms of the Plan and the creditors shall have all rights available to them under State Law or the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or under this Plan.

## RETENTION OF JURISDICTION BY THE COURT

50.    The Plan provides that the Court shall retain jurisdiction for specified purposes, including, without limitation, the determination of all controversies arising under or in regard to

the Plan, objections to claims, hearing, and determining applications for allowances of compensation and reimbursement of expenses, and the enforcement or continuation of orders entered in this case, until substantial Consummation, and closing of the case.

### EFFECTS OF COURT'S CONFIRMATION
### AND FEASIBILITY OF THE PLAN

51.     Pursuant to § 1141of the Bankruptcy Code, the Confirmation Order shall discharge claims against the Debtor which are being treated under the Plan.     Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and holders of equity interest provided herein shall be in exchange for, and in complete satisfaction, discharge, and release of all Claims, against the officers and directors of the Debtor, and the professionals representing the Debtor (arising out of services in connection with this Chapter 11 Case) in this Chapter 11 Case (excluding negligent acts of willful misconduct, *ultra vires* acts, and breaches of fiduciary duty by such professionals). Except as otherwise provided in the Plan, upon the Confirmation Date, all Claims against the above referred to professionals will be satisfied, discharged, and released (except for those obligations identified in the Plan) in full exchange for the consideration provided for hereunder.     Nothing herein shall discharge any claim for fraud or gross negligence against a professional.

52.     The effects of Confirmation of the Plan are set forth in the Bankruptcy Code. The following is a brief summary of the effect of Confirmation upon the Debtor, its creditors, and other interested parties. Upon Confirmation, the provisions of the Plan will bind the Debtor, its equity holders and creditors, whether or not they have accepted the Plan.

16

## ANTICIPATED CONFIRMATION DATE

53.    It is anticipated the Plan will be confirmed by the Bankruptcy Court within forty

(40) days, assuming the following events take place:

    A.    The Plan is duly accepted by creditors; and

    B.    The Bankruptcy Court finds that the Plan is feasible and in the best interest
of creditors; and

    C.    The Court finds that the Plan is fair and equitable and does not
discriminate unfairly; and

    D.    The Debtor has made arrangement with the professionals for
the payment of professional fees.

## WHERE TO FILE BALLOTS ON THE PLAN

54.    Pursuant to a Court Order approving this Disclosure Statement, ballots on the

Debtor's Plan must be received by _____, 2022.    All ballots should be properly completed and

forwarded to:    Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, New York 10017.

Dated: New York, New York
       March 23, 2022

*HELLO LIVING DEVELOPER NOSTRAND LLC*

By:    */s/ Eli Karp*
       Eli Karp
       Manager

*/s/ Leo Fox, Esq.*
Leo Fox, Esq.
Attorney for Debtor
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

17

# *EXHIBIT A*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

In re:                                                      Chapter 11

HELLO LIVING DEVELOPER NOSTRAND, LLC,                        Case No.  21-22696 (SHL)

                                    Debtor.
-----------------------------------------------------------------------X


## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR


Leo Fox, Esq.
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595 - Telephone
(212)  949-1857 - Facsimile
leo@leofoxlaw.com


***ATTORNEY FOR THE DEBTOR***
***AND DEBTOR-IN-POSSESSION***

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of the Debtor or any other party in interest.  This Plan is subject to approval of the Bankruptcy Court and other customary conditions.  This Plan is not an offer with respect to any securities.  This is not a solicitation of acceptances or rejections of the Plan.  Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Southern District of New York in accordance with § 1125 of the Bankruptcy Code.  Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws.

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTOR' SECURITIES) PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

Leo Fox, Esq.
*Attorney for the Debtor and
Debtor-In-Possession*
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595 (Phone)
(212) 949-1857 (Facsimile)
leo@leofoxlaw.com

2

## PLAN OF REORGANIZATION
## DATED MARCH 21, 2022

The above-captioned Debtor and Debtor-in-Possession proposed this Plan of Reorganization (the "*Plan*") pursuant to § 1121 of the Bankruptcy Code. The Plan proposes to pay the Secured Creditor's Allowed claim of $3,000,000 of principle secured by the value of the Debtor's shareholders interest in Hello Nostrand LLC over four (4) years with a balloon payment at the end of the fourth (4th) year and for unsecured creditors to be paid their claims.

The Debtor is the proponent of the Plan. The Plan provides for distributions to the holders of Allowed Claims from funds realized by the Debtor from Lease income of its subsidiary, Hello Nostrand LLC. Hello Nostrand LLC has agreed to provide the Lease Income amounts from its Tenant necessary to pay the above Plan. For a further discussion of the Plan, the reader's attention is directed to the Disclosure Statement being filed by the Debtor in connection with this Plan.

## ARTICLE I
## DEFINITIONS

1.1    All terms in this Plan, unless the context otherwise requires, are as defined in Title 11 of the United States Code. The following terms have the meaning set forth in this Article.

| | |
|---|---|
| *Administrative Claim* | Allowed claims or requests for payment under § 503(b) entitled to Administrative priority under § 507(a)(2) of the Bankruptcy Code and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment) |
| *Allowed Claim* | A "Claim (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in |

3

|  | amount and not disputed or contingent in the Debtor's bankruptcy schedules filed in these Chapter 11 cases, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the permission of this Plan. |
|---|---|
| *Allowed Interest* | An "Interest" (as defined below) (i) proof of which has been filed within the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders identified in the Debtor's bankruptcy schedules which have been filed with the Bankruptcy Court in these Chapter 11 cases; and (iii) in the event of either (i) or (ii) as to which no objection to the allowance thereof has been filed within any applicable period of time fixed by an Order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order of the Bankruptcy Court. |
| *Bankruptcy Code* | Title 11 of the United States Code, § 101, *et. seq.* or as amended thereafter in effect as of the Filing Date. |
| *Carveout* | Any amounts which are payable under § 506(c) of the Bankruptcy Code, including insurance and other amounts necessary for the preservation of the Real Property collateral. |
| *Chapter 11 Case* | The Chapter 11 Case No. 21-22696 (SHL) commenced by the Debtor on the Filing Date. |
| *Claim* | A Claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor including, without limitation, secured claims under § 506 of the Bankruptcy Code, claims allowable under § 502 of the Bankruptcy Code or requests for payment of administrative expenses allowed under § 503 of the Bankruptcy Code. |

4

| | |
|---|---|
| *Claimant or Creditor* | The holder of a Claim, including the holder of a claim for damages resulting from the rejection of an unexpired executory contract or lease. |
| *Confirmation Date* | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |
| *Court* | The United States Bankruptcy Court for the Southern District of New Yor, or such other Court as may, from time to time, have original jurisdiction over this Chapter 11 proceeding. |
| *Debtor* | Hello Living Developer Nostrand LLC |
| *Disallowed Claim* | Any Claim or portion thereof that is determined in a Final Order of the Court not to be allowed pursuant to §§ 502 and 503 of the Bankruptcy Code. |
| *Disclosure Statement* | Any disclosure statement required by § 1125 of the Bankruptcy Code and approved by the Court. |
| *Disputed Claim* | The whole or portion of any Claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof. For any Disputed Claim which is or was asserted as a Secured Claim, the corresponding Lien shall be deemed subject to dispute. |
| *Distribution* | A distribution of cash or cash equivalents to the holders of Allowed Claims under the Plan. |
| *Effective Date* | Shall be a date that the Debtor begins to receive Lease payments after the first (1st) year of Lease Tenant improvements concessions or approximately March 15, 2023. |
| *Estate* | The Estate created in this case pursuant to § 541 of the Bankruptcy Code. |
| *Filing Date* | December 21, 2021 |

5

| | |
|---|---|
| *Final Distribution* | The date on which all Distributions provided for under this Plan have been mailed or otherwise issued to holders of all Allowed Claims. |
| *Final Order* | An Order of a Court from which no Appeal or review can be taken, or as to which all Appeals and reviews have been withdrawn or dismissed or granted with prejudice. |
| *Lease* | The Master Lease Agreement dated as of March 15, 2022 between Hello Nostrand LLC and 1580 Nostrand Management LLC providing for Lease rental to be paid commencing March 15, 2023 under schedules including any obligations of the Debtor under this Plan. |
| *Lease Income* | The Lease Income shall be determined in any year that the Lease in effect. Gross receipts of Lease income less all necessary and operating obligations of the Landlord, including, but not limited to, any roof repair or replacement, and any obligations deemed to be Landlord obligations. |
| *Plan* | The Debtor's Plan of Reorganization or as modified in accordance with the Bankruptcy Code. |
| *Real Property or Property* | Hello Nostrand's Real Estate and associated rights located at 1580 Nostrand Avenue, Brooklyn, New York |
| *Secured Claim* | Any Claim held by a person against the Debtor secured by Collateral but only to the extent of the value of the collateral as set forth in the Plan pursuant to § 506(a) of the Bankruptcy Code, provided, however, that Secured Claim shall not include any portion of a Claim to the extent that the value of such person's interest in the Collateral is less than the amount of such Claim. |
| | |

| | |
|---|---|
| *Unimpaired* | A Claim or Equity Interest that is unimpaired within the meaning of § 1124 of the Bankruptcy Code, in that the Plan does not otherwise alter any legal, equitable or contractual rights to which such Claim entitles the holders of such Claim. |
| | |
| *Unsecured Claim* | Any Claim or right as defined in § 101 of the Bankruptcy Code whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, which is not a Secured Claim a Priority Claim or an Administration Claim. |

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTEREST

2.1    The following classifies claims and equity interests required to be designated in Classes pursuant to §§ 1122 and 1123 (a)(1) of the Bankruptcy Code.  In accordance with § 1123(a)(1) of the Bankruptcy Code, the Administrative Claims have not been classified and their treatment is set forth herein.  Classification of Claim and equity interests in this Plan is for all purposes, including voting, confirmation and distribution pursuant to the Plan.  Claims shall be deemed classified in a particular Class only to the extent that such claim qualifies within the description of that Class and shall be deemed different and classified in a different Class only to the extent that any portion of such claim qualifies within the description of such different Class.  Distribution, on account of any Claim, in any Class, is not required or permitted unless, and, until such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, as the case may be, which might not occur, if at all, until after the Effective Date.  Claims shall be paid based on a "waterfall" manner, where claim of junior priority shall only be paid after prior claims are paid or reserved on prior claims for which there are final orders further distributions can be made

7

to the junior creditors or equity interests.  All payments to groups of creditors or equity holders are paid.  The following summarizes all creditors and equity classes, their amount and whether they are impaired.

## ARTICLE III

## CLASSIFICATION

3.1    The Plan provides that all Allowed Claims will be paid under either a cash payment or a deferred four (4) year payment secured by a security on the hares of Hello Nostrand LLC with a balloon payment at the end of the fourth (4th) year.

**Class 1**

3.2    The Allowed Secured Claims of 1580 Nostrand Mezz LLC holding a claim alleged to be in the amount of approximately $3,000,000 in unpaid principal which is alleged to be $4,500,000 presently which claim includes any prepayment fees, forbearance fees, exit fees, servicing fees and any other charges charged by this creditor (the attorney of Secured Creditor refused to provide a payoff amount for these claims) are the holders of the Allowed Class 1 Claim.

**Class 2**

3.3    Any Allowed unsecured claims.

**Class 3**

3.4    Equity Interests – shall be the holders of the equity interest of the parent Debtor.

## ARTICLE IV

## TREATMENT OF CLAIMS THAT ARE IMPAIRED
## AND WHO WILL VOTE ON THE PLAN

The following claims will be treated as follows:

**Class 1**

4.1    This creditor shall receive monthly principal and interest payments amortized over

8

30 years at the interest rate of a 3.5% annual rate commencing on the Effective Date in full satisfaction and settlement of the claim. The monthly payments shall continue until paid on or before four (4) years following the Effective Date (the "*Final Installment Date*"). Payments shall come from Lease Income of Hello Nostrand LLC.

4.2     The Debtor shall have the right to prepay the Allowed Class 1 Claim in whole, or in part, at any time following Confirmation, without penalty.   In the event of such prepayment, any and all unearned interest shall be deemed waived.  Upon Confirmation, any and all prepayment premiums and any fees, exit fees or such other requirements set forth in the underlying loan shall also be waived and released.  The Debtor shall pay all of its operating obligations.  The terms of the Plan shall be the exclusive terms relating to the repayment of the Allowed Class 1 Claim. The pre-petition loan documents shall have no force or effect after Confirmation. Upon completion of the payments to the holder for the Allowed Class 1 Claim as required by the Plan and resolution of the disputed claims, Class 1 shall be deemed to have released any and all liens on the Debtor' assets.  To the extent required by the Debtor, upon full payment of its Allowed Class 1 Claim, Class 1 holder shall immediately prepare and file any document necessary to effect a release of its liens on the Debtor's assets.

**Class 2**

4.4     Such claims shall be paid, pro rata, in full, with monthly principal payments of $15,000 plus interest at 3.5% interest commencing on or about the Effective Date in full satisfaction and settlement of the claims.

9

## ARTICLE V

## NONIMPAIRED

### Class 3

5.1    The equity holders shall be paid their investments upon the development project under the means provided for in the investment documents with the equity holders.

## ARTICLE VI

## ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

6.1    All operating unpaid administrative expenses of the Chapter 11 Case fees, the Court appointed professionals for the Debtor who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code for services rendered prior to the Confirmation Date subject to a Fee Application on Notice and Court Order and the fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, are not classified and shall be paid in full on the Effective Date.  The United States Trustee Fees and the professional fees, incurred after confirmation at the same hourly rates and terms shall continue to be paid up through the Closing Date of this Chapter 11 Case.  A reserve may be estimated on the Confirmation Date and instituted for the payment of these fees.  The within professional claims for post-confirmation services may be paid under a different agreement reached with the Debtor prior to Confirmation and may be paid without any Court Order.

## ARTICLE VII

## IMPLEMENTATION OF PLAN

7.1    The Debtor shall continue with the litigation against the Secured Creditor (Class 1).

7.2    The Debtor shall act as Distributing Agent.

10

7.3     The Debtor shall monitor the operation of the Hello Nostrand LLC Real Property.

7.4     The litigation with the Secured Creditor will continue until there is a Final Court Order determining the allowability of the Secured Creditor's claims and priority.

7.5     The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim. The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and their property. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

8.1     **Time Limit for Objections to Claims**      Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of this Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the latter of sixty (60) days following the Confirmation Date or within thirty (30) days after the filing of such Claim and service a copy of such Claim upon the Debtor as provided for in the Plan.

8.2     **Resolution of Disputed Claims**      Unless otherwise ordered by this Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days' notice, as between the Debtor and the Creditor of the Claim, who is being objected to.

11

8.3    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of creditors to which the respective holder of an Allowed Claim belongs. Reserves shall be maintained.   Such payments and distributions shall be made as soon as practicable after the date that this Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter.   Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimant or as allowed by this Plan.

## ARTICLE IX

## THE REORGANIZED DEBTOR

9.1    The Debtor shall continue with its corporate status and operate the Debtor' businesses.

9.2    The Debtor shall reserve all distributions from disputed claims pending determination that claims become Allowed claims.

9.3    The case may be closed after initial payments are made to creditors on the Effective Date and may be re-opened, without any fees, as necessary, to implement the Plan.

## ARTICLE X

## EXECUTORY CONTRACTS

10.1    There are no executory contracts.

## ARTICLE XI

## TRANSFER TAX AND RECORDING FEES EXEMPTIONS

11.1    There are not transaction for which a transfer tax is due.

12

## ARTICLE XII

## MODIFICATION OF THE PLAN

12.1    The Debtor may amend and modify this Plan at any time prior to the Confirmation

Order, without approval of this Court. After Confirmation, the Debtor may modify this Plan before

a substantial consummation of this Plan, with the approval of this Court, and upon any Mortgagee's

right to respond.

## ARTICLE XIII

## PROVISIONS FOR CLASSES OR HOLDERS OF CLAIMS
## WHICH ARE AFFECTED BY AND DO NOT ACCEPT THIS PLAN

13.1    Any class or holders of claims or interests which are affected by and do not vote to

accept the Plan in accordance with the provisions of Bankruptcy Code § 1126 shall be treated in

fair and equitable fashion as provided by Bankruptcy Code § 1126(b).

## ARTICLE XIV

## EVENT OF DEFAULT

14.1    The occurrence of any of the following shall constitute a default by the Debtor

under the Plan with respect to creditors.

a.      If (i) the Debtor default in making payments due under the Plan (and a grace

period of ten (10) days after written notice of such default is given by a majority of the

holders of the Class in default shall have passed, and unless such default (hereinafter

referred to as an "Event of Default") has been waived in accordance with the term herein;

(ii) the Debtor breaches any of the covenants contained herein after ten (10) days written

notice by a creditor to the Debtor prior to payment due under the Plan; (iii) the Debtor

seeks relief under any Federal or State Statute (other than the Debtor' present Chapter 11

Case); (iv) or a receiver; liquidator, custodian or trustee is appointed for substantially all

13

of the property of the Debtor prior to completion of the payment due.

      b.     Upon the occurrence of an Event of Default, any creditor shall notify the Debtor, and with the exception of any monetary default on account of payment, the Debtor shall have ten (10) business days from the date of the sending of such notice to cure such breach. With respect to a breach for non-payment, the Debtor shall have a cure period of twenty-five (25) business days. In the event the Debtor fails to cure such breach within the prescribed periods, the Debtor shall be deemed to have defaulted on the terms of the Plan and the creditors shall have all rights available to them under State Law or the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or under this Plan.

## ARTICLE XV

## DISCHARGE AND RELEASE

    15.1    Pursuant to § 1141 of the Bankruptcy Code, the Confirmation Order shall discharge claims against the Debtor which are being treated under the Plan. Except as expressly provided herein, the rights afforded in the Plan and the treatment of all creditors and holders of stock interest provided herein shall be governed by the Plan and shall release Eli Karp and professionals representing the Debtor (arising out of services in connection with this Chapter 11 Case excluding negligent acts or acts of willful misconduct, ultra vires acts and breach of fiduciary duty). Upon the Confirmation Date, all other claims against the above referred to professionals will be satisfied, discharged and released (except for those obligations identified in the Plan) in full exchange for the consideration provided for hereunder.

    15.2    The effects of Confirmation of the Plan are set forth in the Bankruptcy Code. Upon Confirmation, the provisions of the Plan will bind the Debtor, its equity holders and creditors, whether or not they have accepted the Plan.

14

**ARTICLE XVI**

**INJUNCTION AND EXONERATION**

16.1    Except as otherwise provided in the Plan or Confirmation Order, all entities which have held, currently hold or may hold a debt, claim other liability of interest against the Debtor pursuant to, and subject to, the provisions of § 1141 of the Bankruptcy Code and are permanently enjoined with taking any of the following actions on account of such debt, claim, liability, interest or right:  (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under the Plan, other than to enforce any right to distribution with respect to such property under the Plan;  (b) enforcing, attaching, collecting or recovering in any manner or judgment, award, decree, order against the Debtor other than as permitted under subparagraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

**ARTICLE XVII**

**RETENTION OF JURISDICTION AND DISCHARGE**

17.1    Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes.

(a)    Determination of the allowability of claims upon objections filed to such claims and to any litigation commenced by the Debtor post-confirmation related to the Chapter 11 Case, the Plan or any creditor claims;

(b)    Determination of requests for payment of Claims and fees entitled to priority under § 507;

(c)    Resolution of any disputes concerning the interpretation of the Plan;

(d)    Implementation of the provisions of the Plan;

15

(e)    Entry of Orders in aid of consummation of the Plan;

(f)    Modification of the Plan pursuant to § 1127 of the Code;

(g)    Adjudication of any causes of action including voiding power actions commenced by the Debtor-in-Possession; and

(h)    Entry of a Final Order of Consummation and closing the case.

Dated:    New York, New York
          March 21, 2022

                              *HELLO LIVING DEVELOPER NOSTRAND LLC*

                              By:    /s/ Eli Karp
                                     Eli Karp
                                     Manager


*PLAN CONSENTED TO*

*HELLO NOSTRAND LLC*

By:

*EXHIBIT B*



1580 Nostrand Avenue, Brooklyn NY

Hello Nostrand LLC
100%
Eli Karp- Manager

Hello Living Developer Nostrand LLC
100%
Eli Karp - Manager

Hello Nostrand Investors LLC
100%
Eli Karp -Managing Member

See Exhibit A



Exhibit A

Hello Nostrand Investors LLC

| | |
|---|---|
| Hello Living Employees | 1.32% |
| Sholom Bernstein | 0.22% |
| Shmuel Elias | 0.42% |
| Benzion Elias | 0.42% |
| Shalim Meuller | 0.21% |
| Jonathan Meuller | 5.59% |
| BW Nostrand LLC | 5% |
| Moshe Hershkowitz | 2.11% |
| Mabin LLC | 1.84% |
| Joshua Lefkowitz | 2.16% |
| Yisroel Blau | 0.05% |
| MEB 9-17 Trust | 2.11% |
| Hello Nostrand Holdings LLC | 13.95% |
| Brinos Hello Nostrand | 16.05% |
| Eli Karp | 47.6% |

*EXHIBIT C*

Zoho Sign Document ID: ZQJR4IBCUGG4DRWRNBNGZQHA0BRBN7SD    Page 39 of 46

## 21 E 29th St. Master Lease Rent Schedule

**$ 3,200,000.00**  Rent

| Year | RENT | % increase | Rent Increase |
|------|------|------------|---------------|
| 1 | $ 1,600,000.00 | *6 months consessions* | |
| 2 | $ 3,200,000.00 | | |
| 3 | $ 3,264,000.00 | 2% | $ 64,000.00 |
| 4 | $ 3,329,280.00 | 2% | $ 65,280.00 |
| 5 | $ 3,395,865.60 | 2% | $ 66,585.60 |
| 6 | $ 3,463,782.91 | 2% | $ 67,917.31 |
| 7 | $ 3,533,058.57 | 2% | $ 69,275.66 |
| 8 | $ 3,603,719.74 | 2% | $ 70,661.17 |
| 9 | $ 3,675,794.14 | 2% | $ 72,074.39 |
| 10 | $ 3,749,310.02 | 2% | $ 73,515.88 |
| 11 | $ 3,861,789.32 | 3% | $ 112,479.30 |
| 12 | $ 3,977,643.00 | 3% | $ 115,853.68 |
| 13 | $ 4,096,972.29 | 3% | $ 119,329.29 |
| 14 | $ 4,219,881.46 | 3% | $ 122,909.17 |
| 15 | $ 4,346,477.90 | 3% | $ 126,596.44 |
| | **$ 53,317,574.95** | | |

*HF*

# *EXHIBIT D*

## *HELLO LIVING DEVELOPER NOSTRAND LLC*

### *LIQUIDATION ANALYSIS*
### *(ESTIMATED AND APPROXIMATE)*

| | | |
|---|---|---|
| *Assets* | Undetermined | $3,000,000 |
| | Unliquidated | |
| Shares of Stock of Hello Nostrand | Subject to the value of the subsidiary | |
| LLC, a privately held company | Hello Nostrand LLC | |
| | | |
| *Liabilities* | | |
| | | |
| Chapter 7 liquidation claims | | $75,000 |
| | | |
| Chapter 11 administration claims | | $100,000 |
| | | |
| Secured claims | $4,500,000 | $2,825,000 |
| | Claimed | |
| | | |
| Unsecured claims | $1,625,000 | $0 |
| | | |
| *Estimated Total of Liabilities* | | **$3,000,000** |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

IN RE:                                                          Case No.: 21-22696 (SHL)
                                                                Chapter 11

HELLO LIVING DEVELOPER NOSTRAND LLC,

                                Debtor.
-----------------------------------------------------------------X

### ORDER CONDITIONALLY APPROVING DISCLOSURE STATEMENT, COMBINING DISCLOSURE STATEMENT HEARING AND CONFIRMATION HEARING, SCHEDULING HEARING ON CONFIRMATION AND (1) FIXING DATES FOR FILING OF ACCEPTANCES OR REJECTIONS OF THE DEBTOR'S PLAN OF REORGANIZATION, (2) FOR FILING OBJECTIONS TO CONFIRMATION AND (4) FOR APPROVING FORM OF BALLOTS

A Plan of Reorganization, dated March 21, 2022 (the "Plan") and a Disclosure Statement, dated March 24, 2022 (the "Disclosure Statement"), having been filed with the Clerk of this Court and the Debtor having made an Application for ancillary relief and upon the hearings before this Court on _____, 2022.

Now, on motion of Leo Fox, Esq., counsel for the Debtor;

*IT IS HEREBY ORDERED AND NOTICE IS GIVEN THAT*:

1.    The Disclosure Statement is conditionally approved.

2.    A hearing on Final Approval of the Disclosure Statement and confirmation of the Debtor's Plan (the "Confirmation Hearing Date") of the Plan and on any objections to confirmation of the Plan and any motion for temporary allowance of the disputed portion of a claim or interest will be held on _____, 2022 at __:00 _.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of New York, One Bowling Green,

New York 10601.   The Hearing may be adjourned from time to time without further notice other than the announcement in open court at the Confirmation Hearing Date or at any adjourned Confirmation Hearing Date;

3.      On or before a date which is no later than ten (10) days after entry of the within Order of the Court, pursuant to Federal Rule of Bankruptcy Procedure § 3017(d), the Debtor is hereby authorized and directed to transmit by first class mail, postage prepaid, to all known holders of claims against the Debtor and to all equity interest holders of the Debtor, and to other parties in interest having filed a Notice of Appearance and Demand for Service of Papers, (a) this Order, (b) the Plan, (c) the Disclosure Statement, and (d) a Ballot substantially in the form of the Ballot annexed to the Disclosure Statement (the "Ballot").

4.      Service made as provided in the preceding paragraph shall be deemed good and sufficient notice and service pursuant to Federal Rules of Bankruptcy Procedure Rule 3017.

5.      The form of ballot attached to the Disclosure Statement is approved.   Any Ballot which is annexed and returned, but which does not indicate thereon either acceptance or rejection of the Plan shall not be counted.

6.      Acceptance or rejection, of the Plan shall be in writing on the Ballot; shall conform with Federal Rule of Bankruptcy Procedure Rule 3018 and shall be returned by the holders of all claims and interests entitled to vote and received by the Debtor's attorney at the address provided on the Ballot not later than seven days before the Confirmation Hearing Date (the "Voting Deadline").

7.      Only holders of claims allowed under § 502 of the Bankruptcy Code, which are members of classes that are impaired under the Plan may vote to accept or reject the Plan.   If a claim or interest, otherwise allowable under § 502 of the Bankruptcy Code, has been disputed by

2

the Debtor by written objection filed with the Court and served on the holder of such claim or interest, prior to the Confirmation Hearing Date, only the undisputed portion of said claim shall be taken into account in determining whether the Plan has been approved by the requisite portion of the relevant class unless the Court authorizes additional amounts of such claim to be entitled to vote.

8.    Any objection the Confirmation of the Plan must be in writing, must set forth in detail the grounds and facts of such objection and the legal basis therefore, and in accordance with Federal Rule of Bankruptcy Procedure § 3020(b)(1), must be filed on or before seven days before the Confirmation Hearing Date with the Clerk of the Bankruptcy Court, Old Customs House, One Bowling Green, New York, New York, electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-242, and served so as to be received by (1) Leo Fox, Esq., as counsel to Debtor; and (2) The Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 on or before seven days before the Confirmation Date (the "Objections Deadline").

Dated: New York, New York
    March    , 2022

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:                                                    Chapter 11

HELLO LIVING DEVELOPER NOSTRAND LLC,                      Case No.  21-22696 (shl)

                            Debtor.

-----------------------------------------------------------------X

### BALLOT FOR ACCEPTING OR REJECTING
### PLAN OF REORGANIZATION

The above Debtor filed a Plan of Reorganization (the "Plan") attached to the approved Disclosure Statement (the "Disclosure Statement").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  If you do not have a Disclosure Statement, you may obtain a copy from Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, NY 10017, Telephone No. (212) 867-9595, Facsimile No. (212) 949-1857 or by e-mail to leo@leofoxlaw.com.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claim has been placed in Class __ under the Plan.  If you hold claims in more than one class, you will receive a ballot for each class in which you are entitled to vote.

If your ballot is not received by Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, NY on or before _____, 2022 and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

Leo\Clients\Nostrand Properties\Hello Living Developer Nostrand LLC\Disclosure Statement\Ballot V1\3-23-2022

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class ___ claim against the Debtor in the unpaid amount of ($_____) Dollars.

(Check one box only)

☐   ACCEPTS THE PLAN                    ☐   REJECTS THE PLAN

If you reject the Plan, you still have the right to opt out of the provisions of the Plan granting releases to the Debtor's principals.  Please indicate below whether you accept or reject to allowing the principals to receive the releases provided for in the Debtor's Plan.

☐   ACCEPT                              ☐   REJECT

Dated: _____

Print or type name:   _____

Signature:   _____

Title :   _____
                *(If Corporation or Partnership)*

Address:   _____

                _____

**RETURN THIS BALLOT TO**:

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017

2