# LEO FOX, ESQ.

June 1, 2022

**_VIA ECF FILING_**

Honorable Sean H. Lane
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:   Hello Living Developer Nostrand LLC
       Case No. 21-22696

Dear Judge Lane:

I am writing this in connection with the comments made, without warning, by Nostrand Mezz Lender at the hearings last week to exclude Victor Worms' representation of the Debtor and to advise the Court on the status of negotiations.

There are two Hello Nostrand Holdings LLC entities.  The first one is a New York LLC which was formed by Eli Karp in 2014 at the onset of the purchase and proposed development of the Hello Nostrand property.  The ownership interest held by this entity was assigned to the Debtor.  Litigation ensued with third party investors named NAG where Victor Worms was involved with which was apparently referred to by Nostrand Mezz Lender at the hearing last week.  This New York entity was the predecessor to the Debtor.  This New York entity is no longer active.

In 2018, Hello Nostrand Holdings LLC, a Delaware entity, was formed by David Gefner who invested in the project and who ultimately filed a claim for approximately $5,000,000.  This Delaware entity is an investor and not a creditor and has nothing to do with the New York entity

Honorable Sean H. Lane
Page 2
June 1, 2022

that had been owned by Mr. Karp. Mr. Karp never had any interest in the Delaware entity. Mr. Worms never represented this entity. This juxtaposition of the New York and Delaware entities by Nostrand Mezz Lender could have only occurred if Nostrand Mezz Lender was aware of the two (2) entities and simply sprang on us, on me particularly because I was not familiar with these facts at all. Indeed, Nostrand Mezz Lender learned of the two (2) entities because Jerry Feuerstein, their predecessor's attorney, learned of this and prepared the Assignment from the New York entity to the Debtor to sign to assure that the Debtor owned the Hello Nostrand equity interest. The important thing is that Victor Worms, does not and did not represent the Delaware entity and has no conflict or "connection" based upon the actual facts.

I enclose copies of the Operating Agreements of the New York and Delaware entities, the Assignment to the Debtor and their Certificates to confirm this.

An update to you on the status. Both Eli Karp and I have repeatedly reached out to the Nostrand Mezz Lender to try to negotiate an all-cash resolution of Nostrand Mezz Lender's claim and to arrange for inspection of the Premises to no avail. We continue to remain willing to engage in these matters.

Respectfully submitted,

*/s/ Leo Fox*
Leo Fox

LF:cb

cc: Tara Tiantian, UST
  Leo Muchnik, Esq.
  Alan Brody, Esq.
  Victor Worms, Esq.
  Eli Karp

# ACKNOWLEDGEMENT COPY

## ARTICLES OF ORGANIZATION
## OF
## Hello Nostrand Holdings LLC
### Under Section 203 of the Limited Liability Company Law

**FIRST:**    The name of the limited liability company is:

**Hello Nostrand Holdings LLC**

**SECOND:**    The county, within this state, in which the office of the limited liability company is to be located is KINGS.

**THIRD:**    The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

THE LIMITED LIABILITY COMPANY
925 Pacific St Unit 202
Brooklyn, NY 11238

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

Eli Karp, ORGANIZER  (signature)
_____
Eli Karp , ORGANIZER

**Filed by:**
USACORP INC
325 DIVISION AVE.
SUITE 201
BROOKLYN, NY 11211

**USACORP INC. (CS)**

**DRAWDOWN**

**CUSTOMER REF# HENOHO**

N.Y.S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

## ONLINE FILING RECEIPT

=========================================================================

ENTITY NAME: HELLO NOSTRAND HOLDINGS LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)          COUNTY: KING

=========================================================================

FILED:08/27/2014 DURATION:********** CASH#:140827010197 FILE#:140827010197
                         DOS ID:4628114

        FILER:                                          EXIST DATE
        ------                                          ----------
        USACORP INC                                     08/27/2014
        325 DIVISION AVE.
        SUITE 201
        BROOKLYN, NY 11211

        ADDRESS FOR PROCESS:
        --------------------
        THE LIMITED LIABILITY COMPANY
        925 PACIFIC ST UNIT 202
        BROOKLYN, NY 11238

        REGISTERED AGENT:
        -----------------



    The limited liability company is required to file a Biennial Statement with the
    Department of State every two years pursuant to Limited Liability Company Law
    Section 301. Notification that the Biennial Statement is due will only be made via
    email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
    receive an email notification when the Biennial Statement is due.

=========================================================================
SERVICE COMPANY: USACORP INC.-CS
SERVICE CODE: CS

FEE:          200.00                    PAYMENTS     200.00
           ----------                              --------
FILING:       200.00                    CHARGE         0.00
TAX:            0.00                     DRAWDOWN     200.00
PLAIN COPY:     0.00
CERT COPY:      0.00
CERT OF EXIST:  0.00
=========================================================== HENOHO
=========================================================================
                         DOS-1025 (04/2007)

Authentication Number: 1408270207  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at
http://ecorp.dos.ny.gov

## OPERATING AGREEMENT FOR
## HELLO NOSTRAND HOLDINGS, LLC

**AGREEMENT**, made September ____, 2014, between Eli Karp, having an address at 1335 47th Street, Brooklyn, NY 11219 ("Managing Member"), and NAG Nostrand, LLC, having an address at 1069 58th Street, Brooklyn, New York 11219, ("Member") (collectively hereinafter referred to as "Members").

## W I T N E S S E T H:

**WHEREAS**, the parties hereto desire to form a limited liability company pursuant to the laws of the State of New York for the purposes hereinafter set forth, and to establish their respective rights and obligations in connection with the limited liability company;

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Managing Member and Members agree as follows:

### 1. Formation

The parties hereby confirm that they have formed a limited liability company (the "Limited Liability Company" or the "Company") pursuant to the provisions of the New York Limited Liability Company Act, for the purposes and the period and upon the terms and conditions hereinafter set forth. The parties have caused to be filed the Articles of Organization of the Limited Liability Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.

### 2. Name

————The name of the Limited Liability Company shall be Hello Nostrand Holdings LLC and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Members from time to time may determine.

### 3. Purposes

Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern: The nature of the business and of the purposes to be conducted and promoted by the Company, is to engage solely in the following activities:

A.   To own, hold, sell, assign, transfer, operate, lease, manage, mortgage, pledge, to enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Liability Company, to carry on any other activities necessary to, in connection with or incidental to the foregoing and otherwise deal with that certain parcel of real property, together with all improvements located thereon, located 1580 Nostrand Avenue, Brooklyn,

New York (Block 5131, Lot 1) (the "Property"). To construct upon the Property a 23 story, approximately 153 unit building (hereafter referred to interchangeably as the "Project" or the "Building").

B.    To exercise all powers enumerated in the New York Limited Liability Company Act (the "Act") incidental, necessary or appropriate to the conduct, promotion or attainment of the business or purposes otherwise set forth herein.

## 4. Place of Business

The principal place of business of the Limited Liability Company shall be at 925 Pacific Street, #202, Brooklyn, NY, in the County of Kings, or at such other or additional places of business within or outside of the State of New York as the Managing Member from time to time may designate. The Managing Member shall notify the other Members of any change of the principal place of business.

The Limited Liability Company hereby designates the Secretary of State of New York as agent of the Limited Liability Company for the service of process.

## 5. Term

The term of the Limited Liability Company shall commence on the filing of the Articles of Organization of the Limited Liability Company, and shall continue until the occurrence of an event hereinafter set forth which causes the termination of the Limited Liability Company.

## 6. Capital Contributions

Each of the Members shall contribute to the capital of the Limited Liability Company the amount set forth opposite his name below:

Eli Karp -- $800,000.00
NAG Nostrand, LLC -- $15,200,000.00

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce his contributions to the capital of the Limited Liability Company until the termination of the Limited Liability Company. No Member shall have the right to demand and receive any distribution from the Limited Liability Company in any form other than cash, regardless of the nature of such Member's capital contribution. No Member shall be paid interest on capital contributions to the Limited Liability Company.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Liability Company shall be limited to paying: the capital contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Liability Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Liability Company.

**Subject to the terms and provisions of the documents evidencing the Loan (as defined herein), if construction financing cannot be obtained with the current members, the managing member, upon majority vote, may bring in one additional party capable of obtaining the financing and the investing members shall sell their equity shares to accommodate the new member. All sales or transfer of equity shares must be upon approval by the equity partners.**

## 7. Loans and Advances by Members

If any Member shall loan or advance any funds to the Limited Liability Company in excess of the capital contribution of such Member prescribed herein, such loan or advance shall not be deemed a capital contribution to the Limited Liability Company and shall not in any respect increase such Member's interest in the Limited Liability Company.

## 8. Members' Percentage Interests

The term "Members' Percentage Interests" shall mean the percentages set forth opposite the name of each Member below:

| Managing Member | Percentage Interest |
|---|---|
| Eli Karp | 40 percent |
| Other Members | Percentage Interest |
| NAG Nostrand, LLC | 60 percent |

## 9. Books, Records and Tax Returns

At all times during the continuance of the Limited Liability Company, the Managing Member shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The fiscal year of the Limited Liability Company for both accounting and income tax purposes shall be the calendar year. The Limited Liability Company shall report its operations, net income and net losses in accordance with the methods of accounting selected by the Managing Member.

The Managing Member may employ on behalf of the Limited Liability Company and at the expense of the Limited Liability Company such firm of certified public accountants as the Managing Member in his sole discretion deems appropriate to serve as the Limited Liability Company's accountants.

The Managing Member shall furnish to each Member, within sixty days after the

end of each calendar quarter, an unaudited balance sheet as of the end of each quarter and a profit and loss statement of the Limited Liability Company for such quarter and such other information as may be necessary for the Members to prepare their income tax returns.

The Managing Member shall furnish to each Member, within seventy-five days after the end of each fiscal year, an annual report of the Limited Liability Company which shall include a balance sheet as of the end of such fiscal year; a profit and loss statement of the Limited Liability Company for such fiscal year; a statement of the balance in the capital account of such Member; and the amount of such Member's share of the Limited Liability Company's income, gain, losses, deductions and other relevant items for federal income tax purposes.

The Managing Member shall prepare or cause to be prepared all federal, state and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. Within seventy-five days after the end of each fiscal year, the Managing Member shall forward to each person who was a Member during the preceding fiscal year a true copy of the Limited Liability Company's information return filed with the Internal Revenue Service for the preceding fiscal year. The Managing Member shall not be liable to any Member if any taxing authority disallows or adjusts any deductions or credits in the Limited Liability Company's income tax or information returns.

All elections required or permitted to be made by the Limited Liability Company under the Internal Revenue Code, and the designation of a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code for all purposes permitted or required by the Code, shall be made by the Managing Member Eli Karp. The tax matters partner shall take such action as may be necessary to cause each other Member to become a notice member within the meaning of Section 6223 of the Code. The tax matters partner may not take any action contemplated by Sections 6222 through 62312 of the Code without the consent of the Managing Member.

All such records, books of account, tax and information returns, and reports and statements, together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Liability Company, and shall be open to the inspection and examination of the Members or their duly authorized representatives during regular business hours. Each Member, or a duly authorized representative of such Member, may make copies of the Limited Liability Company's books of account and records at the expense of such Member. Any Member, at the expense of such Member, may conduct an audit of the Limited Liability Company's books of account and records. In addition, the Managing Member shall maintain a joint Dropbox account at: (https://www.dropbox.com/sh/2hf6fbtqkhyg446/AAAqZTMEq_vPKmFaQhRe7jVfa?dl=0) which all members of the Limited Liability Company shall have access to at all times and the Managing Member shall maintain in the Dropbox account all documents relevant or relating to the Project as those documents become available to the Managing Member.

The Managing Member shall furnish to each Member, promptly upon request, a current list of the names and addresses of all of the Managing Member and other Members of the Limited Liability Company, and any other persons or entities having any financial interest in the

Limited Liability Company.

The cost of preparing all of the aforesaid records, books, returns and other items shall be borne by the Limited Liability Company. Upon request of the Managing Member, the Members shall pay to the Limited Liability Company, in proportion to the Members' Percentage Interests, the cost of preparing same.

Managing Member represents and warrants that he has conducted reasonable and necessary due diligence, including but not limited to due diligence as to title, environmental conditions and required zoning and permitting and that the due diligence has been reviewed in a commercially reasonable matter and that based on that review, there are no known conditions, leaseholds or other matters which can reasonably be expected to delay or impede the Project.

### 10. Bank Accounts

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such bank account or accounts as shall be designated by the Managing Member. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Liability Company and shall be made upon such signature or signatures as the Managing Member from time to time may designate.

### 11. Management of the Limited Liability Company

The Members hereby designate Eli Karp, having an address at 1335 47th Street, Brooklyn, NY 11219 to serve as Managing Member for the Limited Liability Company.

The business and affairs of the Limited Liability Company shall be conducted and managed by the Managing Member of the Limited Liability Company in accordance with this Agreement and the laws of New York.

The Managing Member shall have responsibility for the day-to-day management of the business and affairs of the Limited Liability Company and shall devote such time and attention as the Managing Member deems necessary to the conduct and management of the business and affairs of the Limited Liability Company.

The cost of the Project is approximated to be Sixty Five Million Dollars ($65,000,000.00). The total capital contribution to the cost of the Project by the Managing Member and the Member as reflected in their capital contribution, as stated above, is Sixteen Million Dollars ($16,000,000.00). The Managing Member shall apply to a bank for construction financing in the amount of Forty Nine Million and Five Hundred Thousand Dollars ($49,500,000.00), which loan shall be secured by a mortgage against the Property and both Members shall co-sign as guarantors for the loan if required by the lender. Member NAG Nostrand, LLC shall not be required to sign any required completion guarantees. The investing Members shall be listed as tenants in common on the deed, title and any other recording instruments until the projects have been completed sold and all investing members are made whole. Notwithstanding the foregoing, the members may waive this tenancy in common either through a unanimous vote or upon the demand from a financial institution lending the

company funds in excess of USD$5,000,000.00 (Five Million US Dollars)

The Members agree that the Managing Member in his sole discretion may spend up to, but not exceed 5% of the total estimated cost of the project as "allowable overages" during the development of the project. For all expenses above the 5% permitted overage, the Members must unanimously agree in writing or the Managing Member must bear the cost of the overage personally.

The Managing Member hereby is given sole power and authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. Unless authorized by the Managing Member, no other person shall have the power or authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. No person, firm or corporation dealing with the Limited Liability Company shall be required to investigate the authority of the Managing Member or to secure the approval of or confirmation by the Members of any act of the Managing Member in connection with the business or affairs of the Limited Liability Company.

No Member, other than the Managing Member or his designees, shall have the authority, or shall take any action as a Member, to bind the Limited Liability Company.

Notwithstanding any other provision of this Agreement, the Managing Member shall not, without the prior written consent of all the unanimous vote or consent of the Members, sell, exchange, lease, assign, encumber or otherwise transfer all or substantially all of the assets of the Limited Liability Company; sell, exchange, lease (other than space leases in the ordinary course of business), assign or transfer the Property; mortgage, pledge or encumber the Property other than as expressly authorized by this Agreement; prepay, refinance, modify, extend or consolidate any existing mortgages or encumbrances; confess a judgment against the Limited Liability Company; approve a merger or consolidation of the Limited Liability Company with or into any other limited liability company, corporation, partnership or other entity: or change the nature or character of the business of the Limited Liability Company.

In the event that the Managing Member acts with Gross Negligence to the property, development or project, then the Managing Member shall be removed by a 51% vote. The newly elected managing Member shall receive a 5% equity stake in the property deducted from the previous Managing Member's equity stake in the company.

"Gross Negligence" shall be defined as "any action or failure to act, which affects the entities ability to pass inspections and receive the certificate of occupancy or places an unapproved financial burden upon the development, in excess of the 5% overage of the original estimated cost of the project."

The Managing Member shall purchase insurance against loss or damage to the Property by fire or other risks embraced by extended coverage, in amounts sufficient to prevent the Limited Liability Company from becoming a co-insurer, and shall maintain such other hazard and liability insurance against such risks and in such amounts as the Managing Member shall deem advisable but at least against such risks and in such amounts as customarily is maintained

for similar properties in the vicinity of the Property.

The Managing Member shall be reimbursed by the Limited Liability Company for all direct out-of-pocket expenses incurred by the Managing Member on behalf of the Limited Liability Company in connection with the performance of his duties hereunder, including without limitation amounts payable by the Managing Member for office, accounting, bookkeeping and other services, materials, facilities and professional and legal services rendered or furnished to the Limited Liability Company, and reasonable fees and other expenses incurred in connection with any sale or refinancing of the Property.

A Managing Member's duty of care in the discharge of the Managing Member's duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law.    In discharging the duties of a Managing Member, the Managing Member shall be fully protected in relying in good faith upon the records of the Limited Liability Company and upon such information, opinions, reports or statements by other Managing Members, Members, agents or other persons as to matters the Managing Member reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Liability Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold the Managing Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Managing Member by reason of any act or omission of the Managing Member made in good faith on behalf of the Limited Liability Company.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold the Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Member by reason of any act or omission of the Member made in good faith on behalf of the Limited Liability Company.

Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern: Any indemnification shall be fully subordinated to any obligations respecting the Property and shall not constitute a claim against the Company in the event that cash flow is insufficient to pay such obligations.

## 12.  Completion of the Project

The Project shall be deemed completed when a certificate of occupancy ("CofO") is obtained for the Building from the New York City Department of Buildings.  In the event that there is any cost overrun on the Project, other than the amounts discussed in Section 8 of this Agreement, NAG Nostrand, LLC may lend the additional needed funds to Hello Nostrand Holdings LLC at a 7 % annual interest. Upon the completion of the Project, the Property will be

refinanced or sold and the proceeds of that loan or sale (hereafter referred to as the "Permanent Loan") will be used as follows:

1. To pay off the construction loan obtained in connection with the construction of the Building.
2. To repay any loans plus any interest of the Member.
3. To return the capital contribution of Member.
4. Remaining balance to be split as set forth in Section 8 of this Agreement.

Both the Managing Member and the Member shall co-sign as guarantors on the Permanent Loan.

### 13. Distributions to Members

After the monthly debt servicing on the Permanent Loan is paid and all of the monthly carrying costs associated with the Building are paid, the net monthly income from the Building shall be divided as set forth in Section 8 of this Agreement between the Managing Member and the Member. In order to maximize the return to the Managing Member and the Member, upon the completion of the Building, the Managing Member and the Member will jointly decide whether it will be more cost effective for the Managing Member to become the managing agent for the Building or whether to retain an outside managing agent to manage the Building. The decision as to whether to use an outside managing agent to manage the building will depend, in part, upon the cost to the Limited Liability Company of having an outside managing agent as opposed to the cost to the Limited Liability Company of having the Managing Member be the managing agent for the Building.

### 14. Meetings of Members

The annual meeting of the Members shall be held on the first Tuesday in the month of January, at 1:00 P.M., at the principal office of the Limited Liability Company, for the purpose of transacting such business as may come before the meeting. If the day fixed for the annual meeting shall be a legal holiday, such meeting shall be held on the next succeeding business day.

The Members may by resolution prescribe the time and place for the holding of regular meetings and may provide that the adoption of such resolution shall constitute notice of such regular meetings.

Special meetings of the Members, for any purpose or purposes, may be called by any Members (or such other number of Members as the Members from time to time may specify).

Written or email notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than three days before the date of the meeting, either personally or by email, by or at the direction of the Managing Member, to each Member of record entitled to vote at such meeting. When all the Members of the Limited Liability Company are present at any meeting, or if those

not present sign a written waiver of notice of such meeting, or subsequently ratify all the proceedings thereof, the transactions of such meeting shall be valid as if a meeting had been formally called and notice had been given.

At any meeting of the Members, the presence of all of the Members, as determined from the books of the Limited Liability Company, represented in person or by proxy, shall constitute a quorum for the conduct of the general business of the Limited Liability Company. However, if any particular action by the Limited Liability Company shall require the vote or consent of some other number or percentage of Members pursuant to this Agreement, a quorum for the purpose of taking such action shall require such other number or percentage of Members. If a quorum is not present, the meeting may be adjourned from time to time without further notice, and if a quorum is present at the adjourned meeting any business may be transacted which might have been transacted at the meeting as originally notified. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough Members to leave less than a quorum.

At all meetings of the Members, a Member may vote by proxy executed in writing by the Member or by a duly authorized attorney-in-fact of the Member. Such proxy shall be filed with the Managing Member of the Limited Liability Company before or at the time of the meeting. No proxy shall be valid after three months from the date of execution, unless otherwise provided in the proxy.

If at any time a Member is a corporation, partnership or limited liability company, the interest of such Member may be voted by such officer, partner, agent or proxy of such Member as the bylaws, board directors, or other organization documents of such entity may duly authorize.

The Managing Member or his designee shall preside at meetings of the Members. A record of the meetings shall be maintained by a secretary of the meetings designated by the Managing Member. The Members may adopt their own rules of procedure, which shall not be inconsistent with this Operating Agreement.

A Member of the Limited Liability Company who is present at a meeting of the Members at which action on any matter is taken shall be presumed to have assented to the action taken, unless the dissent of such Member shall be entered in the minutes of the meeting or unless such Member shall file a written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by certified mail to the Limited Liability Company within fifteen days after the adjournment of meeting. Such right to dissent shall not apply to a Member who voted in favor of such action.

Unless otherwise provided by law, any action required to be taken at a meeting of the Members, or any other action which may be taken at a meeting of the Members, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the Members entitled to vote with respect to the subject thereof.

Members of the Limited Liability Company may participate in any meeting of the

Members by means of conference telephone or similar communication if all persons participating in such meeting can hear one another for the entire discussion of the matters to be voted upon. Participation in a meeting pursuant to this paragraph shall constitute presence in person at such meeting.

## 15. Assignment of Interests

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Liability Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability Company without the prior written consent of the other Members in each instance.

A Member may assign all or any part of such Member's interest in the allocations and distributions of the Limited Liability Company to any of the following (collectively the "permitted assignees"): (1) any person, corporation, partnership or other entity as to which the Limited Liability Company has given consent to the assignment of such interest in the allocations and distributions of the Limited Liability Company by the unanimous vote or consent of the Members; (2) entities created by said Member for estate planning purposes that are controlled by said Member. An assignment to a permitted assignee shall only entitle the permitted assignee to the allocations and distributions to which the assigned interest is entitled, unless such permitted assignee applies for admission to the Limited Liability Company and is admitted to the Limited Liability Company as a Member in accordance with this Agreement.

An assignment, pledge, hypothecation, transfer or other disposition of all or any part of the interest of a Member in the Limited Liability Company or other person holding any interest in the Limited Liability Company in violation of the provisions hereof shall be null and void for all purposes.

No assignment, transfer or other disposition of all or any part of the interest of any Member permitted under this Agreement shall be binding upon the Limited Liability Company unless and until a duly executed and acknowledged counterpart of such assignment or instrument of transfer, in form and substance satisfactory to the Managing Member, has been delivered to the Limited Liability Company.

No assignment or other disposition of any interest of any Member may be made if such assignment or disposition, alone or when combined with other transactions, would result in the termination of the Limited Liability Company within the meaning of Section 708 of the Internal Revenue Code or under any other relevant section of the Code or any successor statute. No assignment or other disposition of any interest of any Member may be made without an opinion of counsel satisfactory to the Managing Member that such assignment or disposition is subject to an effective registration under, or exempt from the registration requirements of, the applicable federal and state securities laws. No interest in the Limited Liability Company may be assigned or given to any person below the age of 21 years or to a person who has been adjudged to be insane or incompetent.

Anything herein contained to the contrary, the Managing Member and the Limited Liability Company shall be entitled to treat the record holder of the interest of a Member as the absolute owner thereof, and shall incur no liability by reason of distributions made in good faith to such record holder, unless and until there has been delivered to the Managing Member the assignment or other instrument of transfer and such other evidence as may be reasonably required by the Managing Member to establish to the satisfaction of the Managing Member that an interest has been assigned or transferred in accordance with this Agreement.

### 16.  Transfer Between Members in Event of Dispute

In the event that there is a dispute or disagreement between the Members such that either Member desires to purchase and acquire the other Member's interest in the Limited Liability Company, then such Member (the "Purchasing Member") shall give the other Member written notice of Purchasing Member's offer to purchase such interest. Such offer shall set forth the purchase price, subject to the fair market value and any other material terms of the Purchasing Member's offer to purchase such interest.

Within fifteen days after the delivery of said offer, the other Member shall deliver to the Purchasing Member a written notice either accepting or rejecting such offer. Failure to deliver said notice within fifteen days shall conclusively be deemed a rejection of the offer. If the other Member rejects said offer, then the other Member hereby agrees to purchase and acquire the Purchasing Member's interest in the Limited Liability for the same purchase price, subject to the fair market value and material terms that were included in the Purchasing member's original offer. The Purchasing Member shall then be obligated to sell and transfer his interest in the Limited Liability Company to the other Member, according to those same terms that were set forth in Purchasing Member's original offer.

Upon either acceptance or rejection of the Purchasing Member's said offer, the Member who has agreed to the purchase of the other Member's interest in the Limited Liability Company according to the provisions provided herein, shall pay a Downpayment in the amount of 20% of such purchase price prescribed in said offer, to the other Member who is selling his interest in the Limited Liability Company, which said amount shall be nonrefundable. The remainder of the purchase price shall be paid at the time of closing of title of such transfer of interest, which closing shall take place within 90 days of either acceptance or rejection of the Purchasing Member's said offer.

### 17.  Admission of New Members

The Members may admit new Members (or transferees of any interests of existing Members) into the Limited Liability Company by the unanimous vote or consent of all the Members.

As a condition to the admission of a new Member, such Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Managing Member, as the Managing Member may deem necessary or desirable to effectuate such admission and to confirm the agreement of such Member to be bound by all of the terms, covenants and conditions

of this Agreement, as the same may have been amended.  Such new Member shall pay all reasonable expenses in connection with such admission, including without limitation reasonable attorneys' fees and the cost of the preparation, filing or publication of any amendment to this Agreement or the Articles of Organization, which the Managing Member may deem necessary or desirable in connection with such admission.

No new Member shall be entitled to any retroactive allocation of income, losses, or expense deductions of the Limited Liability Company.  The Managing Member may make pro rata allocations of income, losses or expense deductions to a new Member for that portion of the tax year in which the Member was admitted in accordance with Section 706(d) of the Internal Revenue Code and regulations thereunder.

In no event shall a new Member be admitted to the Limited Liability Company if such admission would be in violation of applicable federal or state securities laws or would adversely affect the treatment of the Limited Liability Company as a partnership for income tax purposes.

### 18.  Dissolution and Liquidation

The Limited Liability Company shall terminate upon the occurrence of any of the following:  the election by the Members to dissolve the Limited Liability Company made by the unanimous vote or consent of the Members; or any other event which pursuant to this Agreement, as the same may hereafter be amended, shall cause a termination of the Limited Liability Company.

The liquidation of the Limited Liability Company shall be conducted and supervised by the Managing Member or if there be none then by a person designated for such purposes by the unanimous vote or consent of the Members (the "Liquidating Agent").  The Liquidating Agent hereby is authorized and empowered to execute any and all documents and to take any and all actions necessary or desirable to effectuate the dissolution and liquidation of the Limited Liability Company in accordance with this Agreement.

Promptly after the termination of the Limited Liability Company, the Liquidating Agent shall cause to be prepared and furnished to the Members a statement setting forth the assets and liabilities of the Limited Liability Company as of the date of termination.  The Liquidating Agent, to the extent practicable, shall liquidate the assets of the Limited Liability Company as promptly as possible, but in an orderly and businesslike manner so as not to involve undue sacrifice.

Upon compliance with the distribution plan, the Members shall cease to be such, and the Managing Member shall execute, acknowledge and cause to be filed such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Liability Company.

Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern:

The vote of a majority-in-interest of the remaining members is sufficient to continue the life of the Company. If such vote is not obtained, for so long as the Loan is outstanding, the Company shall not liquidate the Property without first obtaining approval of the Lender. Lender may continue to exercise all of its rights under the existing security agreements or mortgages until the debt underlying the mortgage liens has been paid in full or otherwise completely discharged.

### 19. Representations of Members

Each of the Members represents, warrants and agrees that the Member is acquiring the interest in the Limited Liability Company for the Member's own account for investment purposes only and not with a view to the sale or distribution thereof; the Member, if an individual, is over the age of 21; if the Member is an organization, such organization is duly organized, validly existing and in good standing under the laws of its state of organization and that it has full power and authority to execute this Agreement and perform its obligations hereunder; the execution and performance of this Agreement by the Member does not conflict with, and will not result in any breach of, any law or any order, writ, injunction or decree of any court or governmental authority against or which binds the Member, or of any agreement or instrument to which the Member is a party; and the Member shall not dispose of such interest or any part thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any state or other governmental authorities, as the same may be amended.

### 20. Notices

All notices, written notices, demands, requests, approvals or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be via email and shall be deemed to have been properly given if sent to the email addresses as follows:

- • to Eli Karp at elikarp@me.com;
- • to NAG Nostrand, LLC at JGold@windsordistributors.com and Ben.Nash@pcsww.com.

Each Member shall keep the Limited Liability Company and the other Members informed of such Member's current addresses and email addresses.

Notwithstanding the foregoing, all notices relating to budget overages must be in writing, with a physical signature attached. Electronic signatures are not valid for this purpose.

### 21. Arbitration

Any disagreements between the parties shall be resolved by an established orthodox Jewish Beth Din located in the greater New York City area, as selected in good faith by the parties, in their sole and absolute discretion. If no such selection is made within 14 days after written notice by one party to the other then each side shall select an orthodox Rabbi and the two so selected Rabbis shall select a third orthodox Rabbi, and the three selected Rabbis shall settle the dispute, and judgment upon the award may be entered in any court having jurisdiction

thereof. If a party has not selected an orthodox Rabbi, within 14 days after written notice by the other side, then the other party shall select two orthodox Rabbis and the two so selected shall select a third orthodox Rabbi, and the three selected Rabbis shall settle the dispute, and judgment upon the award may be entered in any court having jurisdiction thereof.

In the event of a dispute concerning the management of the Company by the Managing Member, the performance of the Managing Member or the progress of the Project, the dispute shall be submitted to and resolved by Rabbi Naftali Meir Babad, and if he is not available, then to any mutually agreed upon rabbi from the Tartikov Beth Din. If the parties cannot agree upon the Rabbi, Tartikov Beth Din will designate Rabbi. The selected Rabbi shall settle the dispute, and judgment upon the award may be entered in any court having jurisdiction thereof. The selected Rabbi shall not be limited by the definitions found in this agreement.

Any such resolution may be enforced in the courts of the State of New York. Notwithstanding the foregoing, the parties agree that temporary injunctive relief may be obtained until an award of arbitration of decision is entered.

## 22. Amendments

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the unanimous vote or consent of the Members. No amendment may be made to Articles 6, 8, 13 and 16 hereof, insofar as said Articles apply to the financial interests of the Members, except by the vote or consent of all of the Members. No amendment of any provision of this Agreement relating to the voting requirements of the Members on any specific subject shall be made without the affirmative vote or consent of at least the number or percentage of Members required to vote on such subject.

## 23. Certain Prohibited Activities

Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern: For so long as the mortgage loan (the "Loan") made by Knighthead SSRE REIT, Inc., a Delaware corporation, or its successors and/or assigns, as their interests may appear ("Lender") to the Hello Nostrand LLC, a New York limited liability company, is outstanding, the Company shall not: (i) incur, assume, or guaranty any other indebtedness, except for trade payables in the ordinary course of its business of owning and operating the Property; (ii) engage in, seek or consent to any dissolution, winding up, liquidation, consolidation, merger, asset sale or transfer of membership interest; (iii) file or consent to the filing of any bankruptcy, insolvency or reorganization case or proceeding; (iv) institute any proceedings under any applicable insolvency law or otherwise seek any relief under any laws relating to the relief from debts or the protection of debtors generally; (v) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for itself or any other entity, (vi) make an assignment of its assets for the benefit of its creditors or an assignment of the assets of another entity for the benefit of such entity's creditors; (vii) take any action in furtherance of the foregoing or (viii) amend this Operating Agreement without first obtaining approval of Lender.

## 24. Separateness Covenants

Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern: for so long as the Loan is outstanding, in order to preserve and ensure its separate and distinct identity, in addition to the other provisions set forth in this Operating Agreement, the Company shall not, without the prior written consent of Lender:

A.  fail to establish and maintain an office through which its business shall be conducted separate and apart from that of any of its Affiliates;

B.  fail to allocate fairly and reasonably any overhead for shared office space;

C.  fail to maintain separate records, books and accounts from those of any Affiliate or any other Person;

D.  commingle funds or assets with those of any Affiliate or any other Person;

E.  fail to conduct its business and hold its assets in its own name;

F.  fail to maintain financial statements, accounting statements and prepare tax returns separate from any Affiliate or any other Person;

G.  fail to pay any liabilities out of its own funds, including salaries of any employees, rather than out of the funds of any Affiliate, or maintain a sufficient number of employees in light of its contemplated business operations;

H.  fail to maintain adequate capital in light of its contemplated business operations;

I.  fail to maintain an arm's length relationship with any Affiliate;

J.  assume or guarantee or become obligated for the debts of any other entity, including any Affiliate, or hold out its credit as being available to satisfy the obligations of others;

K.  have any of its obligations guaranteed by any partners, members or shareholders or Affiliates, except the Guarantor;

L.  pledge its assets for the benefit of any other Person or entity (other than Lenders) or make an advance or loan to any Person or entity, including any Affiliate;

M.  acquire obligations or securities of its partners, members or shareholders or any Affiliate;

N.  fail to use stationery, invoices and checks separate from any Affiliate or any other Person;

O.  fail to hold itself out as an entity separate and distinct from any Affiliate and not as a division, department or part of any other Person or entity;

P.    identify its members or any Affiliates as a division or part of it;

Q.    fail to correct any known misunderstanding regarding its separate identity;

R.    fail to maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any other entity;

S.    share a common logo with any Affiliate or any other Person;

T.    acquire or own any material assets other than the Collateral;

U.    fail to maintain its books, records, resolutions and agreements as official records;

V.    fail to hold regular meetings, as appropriate, to conduct its business and observe all organizational formalities (including, without limitation, failing to preserve its existence as an entity duly organized, validly existing and in good standing under the applicable law of the State of New York) and record keeping;

W.    convert Borrower into a partnership, limited partnership, corporation or other form of entity; or

X.    merge into or consolidate with any other person or entity, or, to the fullest extent permitted by law, dissolve, terminate, liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure.

For purpose of this Section 24, the following terms shall have the following meanings:

"Affiliate" means any Person controlling or controlled by or under common control with the Company including, without limitation (i) any Person who has a familial relationship, by blood, marriage or otherwise with any partner or employee of the Company, or any affiliate thereof and (ii) any Person which receives compensation for administrative, legal or accounting services from the Company, or any affiliate. For purposes of this definition, "control" when used with respect to any specified Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization, or government or any agency or political subdivision thereof.

### 25. Voting

Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern: When acting on matters subject to the vote of the members, notwithstanding that the Company is not then insolvent, all of the members shall take into account the interest of the Company's creditors, as well as those of the members.

### 26. UCC Article 8

Each limited liability membership interest in the Company shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8 102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

### 27. Miscellaneous

This Agreement and the rights and liabilities of the parties hereunder shall be governed by and determined in accordance with the laws of the State of New York. Every provision of this Agreement is intended to be severable. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. All pronouns shall be deemed to be the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. References to a person or persons shall include partnerships, corporations, limited liability companies, unincorporated associations, trusts, estates and other types of entities. The Managing Member and the Members collectively are referred to herein as the Members. Any one of the Members is referred to herein as a Member. References to the Internal Revenue Code shall mean the Internal Revenue Code of 1986, as amended, and any successor or superseding federal revenue statute.

This Agreement, and any amendments hereto may be executed in counterparts all of which taken together shall constitute one agreement.

This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter hereof. It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of federal income tax rules or is expressly prohibited

or ineffective under the New York Limited Liability Company Act, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the New York Limited Liability Company Act, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the New York Limited Liability Company Act. If the New York Limited Liability Company Act is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date first above written.

MEMBERS:

By: _____
Name: Eli Karp

NAG NOSTRAND, LLC

By:_____
Jacob Gold

By:_____
Ben Nash

or ineffective under the New York Limited Liability Company Act, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the New York Limited Liability Company Act, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the New York Limited Liability Company Act. If the New York Limited Liability Company Act is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date first above written.

MEMBERS:

By: _____
    Name: Eli Karp

NAG NOSTRAND, LLC

By: _____
    Jacob Gold

By: _____
    Ben Nash

or ineffective under the New York Limited Liability Company Act, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the New York Limited Liability Company Act, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the New York Limited Liability Company Act. If the New York Limited Liability Company Act is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date first above written.

MEMBERS:

By: _____
      Name: Eli Karp


NAG NOSTRAND, LLC

By:_____
      Jacob Gold

By:_____
      Ben Nash

STATE OF NEW YORK, COUNTY OF                    , SS.

On the  4ᵗʰ day of September, 2014, before me, the undersigned notary public, personally appeared Eli Karp, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

MARISOL ROSARIO
Notary Public, State of New York
No. 01RO6178665
Qualified in Kings County
Commission Expires Dec. 3, 2015

Notary Public
My commission expires on

STATE OF NEW YORK, COUNTY OF                    , SS.

On the        day of September, 2014, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of NAG Nostrand, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires on

STATE OF NEW YORK, COUNTY OF                    , SS.

On the        day of September, 2014, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of NAG Nostrand, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires on

RE:44775\0001\554054v2

STATE OF NEW YORK, COUNTY OF           , ss.

On the       day of September, 2014, before me, the undersigned notary public, personally appeared Eli Karp, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires on

STATE OF NEW YORK, COUNTY OF   K ny   , ss.

On the 3 day of September, 2014, before me, the undersigned notary public, personally appeared ___Jacob Gold___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of NAG Nostrand, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

| CHANTZA HOROWITZ |
| Notary Public, State of New York |
| Registration #01HO6217058 |
| Qualified In Kings County |
| Commission Expires February 18, 2016 |

_____
Notary Public
My commission expires on 2 8 18

STATE OF NEW YORK, COUNTY OF           , ss.

On the       day of September, 2014, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of NAG Nostrand, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires on

STATE OF NEW YORK, COUNTY OF                    , ss.

On the        day of September, 2014, before me, the undersigned notary public, personally appeared Eli Karp, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires on

STATE OF NEW ~~YORK~~ *Jusey* COUNTY OF *Morris* , ss.

On the *4th* day of September, 2014, before me, the undersigned notary public, personally appeared *Chaim T. Nash* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of NAG Nostrand, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public   YADIRA GONZALEZ
My commission expires on ID # 2398748
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 5/24/2015

STATE OF NEW YORK, COUNTY OF                    , ss.

On the        day of September, 2014, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of NAG Nostrand, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires on

*PAGE 1 of 1*                                                                          *Service Request# 20170733746*



# State of Delaware

SECRETARY OF STATE
DIVISION OF CORPORATIONS
P.O. BOX 898
DOVER, DELAWARE 19903

*9609230*                                                                                    *02-08-2017*
*USACORP INC.*
*325 DIVISION AVE STE 201*
*BROOKLYN, NY  11211*

*ATTN: JOSEPH STRAUSS*

| DESCRIPTION | AMOUNT |
|---|---|

*6310940 - HELLO NOSTRAND HOLDINGS LLC*
*0102Y  LLC*

| | |
|---|---|
| *Formation Fee* | *$70.00* |
| *Court Municipality Fee, Wilm.* | *$20.00* |
| *Expedite Fee, 24 Hour* | *$50.00* |
| *TOTAL CHARGES* | *$140.00* |
| *TOTAL PAYMENTS* | *$140.00* |
| *BALANCE* | *$0.00* |

# STATE *of* DELAWARE
# LIMITED LIABILITY COMPANY
# CERTIFICATE *of* FORMATION

**FIRST:** The name of the limited liability company is:

**Hello Nostrand Holdings LLC**

**SECOND:** The address of its registered office in the State of Delaware is 1013 Centre Road, Suite 403S, Wilmington, Delaware 19805.  The name of its registered agent at such address is Registered Agents Legal Services, LLC.

**In Witness Whereof,** the undersigned have executed this Certificate of Formation this 8th day of February, 2017.

By: /s/ David Gefner

Authorized Person (s)

Name: David Gefner

State of Delaware
Secretary of State
Division of Corporations
Delivered  11:23 AM 02/08/2017
FILED  11:23 AM 02/08/2017
SR 20170733746 - File Number 6310940

# OPERATING AGREEMENT

## OF

## HELLO NOSTRAND HOLDINGS, LLC

This Operating Agreement (this **"Agreement"**) of **HELLO NOSTRAND HOLDINGS, LLC (the "Company"),** is entered into as of January 24, 2018 by David Gefner, an individual, and (the **"Member"**), as the member of the Company.

Pursuant to and in accordance with the Delaware Limited Liability Company Act, as amended from time to time (the **"LLCA"**), the Members hereby state as follows:

1.    **Name**.  The name of the limited liability company shall be HELLO NOSTRAND HOLDINGS, LLC.

2.    **Office**.  The principal office of the Company is 351 Spook Rock Road, Suffern, New York 10901 or such other place or places as the Members shall determine.

3.    **Term**.  The term of the Company shall commence as of the date of filing of the Certificate of Formation of the Company with the Office of the Secretary of the State of Delaware and the Company shall be dissolved and its affairs wound up as provided in said Articles, in this Agreement or as otherwise provided in the LLCA.

4.    **Purpose.**  The Company's business and purpose shall be to acquire and own membership interests in real estate holdings and to engage in any activity incidental or related thereto as may be permitted pursuant to the terms hereof and the LLCA.

5.    **Title To Company Property.**  All property owned by the Company shall be owned by the Company as an entity and, insofar as permitted by applicable law, no Member shall have any ownership interest in any Company property in its individual name or right, and each Member's percentage membership interests/equity (the **"Percentage Interest"**) shall be personal property for all purposes.

6.    **Effect of Bankruptcy, Death or Incompetency of a Member.**  The bankruptcy, death, dissolution, liquidation, termination or adjudication of incompetency of a Member shall not cause the termination or dissolution of the Company and the business of the Company shall continue.  Upon any such occurrence, the trustee, receiver, executor, administrator, committee, guardian or conservator of such Member shall have all the rights of such Member (an **"Assignee"**) for the purpose of settling or managing its estate or property, subject to satisfying conditions precedent to the admission of such Assignee as a substitute Member.  The transfer by such trustee, receiver, executor, administrator, committee, guardian or conservator of any Member's Percentage Interest shall be subject to all of the restrictions hereunder to which such transfer would have been subject if such transfer had been made by such bankrupt, deceased, dissolved, liquidated, terminated or incompetent Member.

7. **Members**.  The name of each of the Members and their respective Percentage Interest are as set forth on Schedule A.  The mailing address for each of the Members shall be as set forth in the books of the Company.

8. **Management; Powers**.  The business and affairs of the Company shall be managed by David Gefner, who shall be the Manager of the Company.  Subject to Paragraph 13 below, the Manager is authorized to make all decisions and take all actions relating to the Company, and to execute any and all documents on behalf of the Company necessary or appropriate in connection with the acquisition, financing, operation, management or development of any property of the Company, including, without limitation, the Manager is authorized to make any and all decisions, take any and all actions, and to execute any and all documents necessary or appropriate in connection with the acquisition by the LLCA and any all actions .

9. **Capital Contributions**.  The initial capitalization of the Company shall be as set forth in the books of the Company.

10. **Additional Contributions**.  No Member is required to make any additional capital contribution to the Company, provided however, that additional capital contributions may be made at such time and in such amounts as the Manager shall determine.

11. **Allocation of Profits and Losses**.  The Company's profits and losses shall be allocated to each Member in accordance with their Percentage Interest.  In no event, however, may any such allocation be in violation of any applicable law.

12. **Distributions**.  Distributions shall be made to the Member at the times and in the aggregate amounts as determined by the Manager and in accordance with the same percentages as profits and losses are allocated.

13. **Major Decisions**.  Notwithstanding any provision of this Agreement to the contrary, the consent of all the Members shall be required for any sale or other disposition of any material portion of the Company property or any refinancing of the indebtedness of the Company.

14. **Assignments**.  A Member may not assign or transfer in whole or in part his interest in the Company without the consent of the Manager, which consent may be given or withheld in the sole discretion of the Manager.

15. **Withdrawal of a Member; Termination of the Company**.  If there is more than one Member, then no Member shall be permitted to withdraw from the Company or demand a return or payment of his capital contribution.

16. **Admission of Additional Members**.  The Manager may cause the Company to admit one or more additional members to the Company.

17.    **Liability of Member**.  The Member and the Manager shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the LLCA.

18.    **Exculpation of Member**.  The Member and the Manager shall not be liable to the Company for any breach of duty in such capacity, unless otherwise provided by law.

19.    **Governing Law**.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws.

SIGNATURE PAGE FOLLOWS

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Operating Agreement effective as of the date first mentioned hereinabove.

MEMBER:


By: _____
　　　David Gefner


MANAGER:


By: _____
　　　David Gefner

## ASSIGNMENT OF MEMBERSHIP INTERESTS

In consideration of value received, Hello Nostrand Holdings LLC, a New York  limited liability company (the "Assignor"), hereby assigns and transfers **ALL** of its Membership Interests in Hello Nostrand LLC, a New York limited liability company (the "Company") to Hello Living Developer Nostrand LLC, a New York limited liability company (the "Assignee").

ASSIGNOR HEREBY represents and warrants that it was a valid member of the Company prior to this Assignment, that the Company was validly formed in accordance with all applicable laws and the Certificate of Formation for the Company were duly filed with the State of New York Department of State, that it is authorized to transfer the subject Membership Interests in the Company and that the subject Membership Interests are not encumbered or otherwise pledged.

[Remainder of the page intentionally left blank. Signatures to follow]

Dated: _____

**ASSIGNOR:**

Hello Nostrand Holdings LLC, a New York limited liability company

By: _____
Eli Karp
Manager

**ASSIGNEE:**

Hello Living Developer Nostrand LLC, a New York limited liability company

By: _____
Eli Karp
Manager