| | |
|---|---|
| Alan J. Brody | Leo Muchnik |
| **GREENBERG TRAURIG, LLP** | **GREENBERG TRAURIG, LLP** |
| 500 Campus Drive, Suite 400 | One Vanderbilt Avenue |
| Florham Park, New Jersey 07932 | New York, New York 10017 |
| Telephone: (973) 443-3543 | Telephone: (212) 801-9200 |
| Email: BrodyA@gtlaw.com | Email: MuchnikL@gtlaw.com |

*Attorneys for Nostrand Mezz Lender LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>HELLO LIVING DEVELOPER NOSTRAND LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-22696 (SHL) |

**NOSTRAND MEZZ LENDER LLC'S OBJECTION TO**
**DEBTOR'S APPLICATION TO RETAIN VICTOR A. WORMS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Nostrand Mezz Lender LLC ("Mezz Lender"), by and through its undersigned counsel, hereby files this objection to the Debtor's application to retain Victor A. Worms ("Mr. Worms") as its co-counsel in the above-captioned chapter 11 case, and respectfully states:

**PRELIMINARY STATEMENT**

1.  The Debtor has now made four attempts over three months to retain Mr. Worms. This delay and protracted retention application are of the Debtor's and Mr. Worms' own doing. As discussed below, Debtor initially sought to bypass the Bankruptcy Code's retention provisions altogether by bootstrapping Mr. Worms' engagement to Mr. Fox's retention order. After that attempt failed, the Debtor repeatedly filed incomplete disclosures concerning Mr. Worms' connections with the Debtor and its principal and/or the services for which he was being retained.

2.  Unfortunately for Mr Worms, the various applications and declarations he filed with the Court contradict themselves in terms of the scope of his engagement. Inexcusably, readers

are left wondering what exact services Mr. Worms is being retained to perform for the Debtor. By way of example only, Debtor previously stated that Mr. Worms would not represent the Debtor in connection with its efforts to approve a disclosure statement and/or confirm a chapter 11 plan. Yet, Mr. Worms' latest filings expressly provide for the opposite: that he would represent the Debtor in obtaining approval of a disclosure statement and prompt confirmation of a chapter 11 plan.

3.  Moreover, his latest declaration makes clear that Mr. Worms has a material conflict in this case and cannot faithfully represent the Debtor and its estate. Specifically, Mr. Worms is carving out of his engagement any work adverse to the Debtor's principal (Mr. Karp), its subsidiary (Hello Nostrand, LLC) and any entity in which Mr. Karp has an interest (e.g., Hello Nostrand Investors, LLC ("Hello Investors")) (the Debtor's parent company and an entity in which Mr. Karp is the majority equity holder) or Supreme Builder (the general contractor involved in the Debtor's underlying project)). Mr. Karp, Hello Nostrand and Mr. Karp's affiliated entities are likely the only other parties in interest in the case, and the Debtor may have causes of action against some of these parties. Yet, Mr. Worms cannot and will not, by his own declaration, represent the Debtor in connection with any of these parties.

**RELEVANT BACKGROUND**

A.  Debtor's Initial Attempt to Retain Mr. Worms

4.  On April 12, 2022, Mezz Lender filed a motion seeking dismissal of the chapter 11 case or, alternatively, relief from the automatic stay to purse a foreclosure sale of its collateral [ECF No. 45] (the "Dismissal/Lift Stay Motion"), all as more fully explained therein.

5.  On or about April 19, 2022, Debtor's counsel, Mr. Fox, informed Mezz Lender for the very first time that Mr. Worms was going to represent the Debtor, and that he was now "of counsel".

6. The next day, on April 20, 2022, Mezz Lender's counsel explained to Mr. Fox that Mr. Worms had not filed an application to be retained under Section 327 of the Bankruptcy Code, nor an affidavit attesting to his disinterestedness. Accordingly, Mr. Worms failed to properly disclose his connections with the various entities and with Mr. Karp, the matters for which he was being retained by Debtor, or how Mr. Worms was going to be compensated for his work.

7. In lieu of submitting a retention application for Mr. Worms under Section 327 of the Bankruptcy Code, Debtor initially attempted to retain Mr. Worms through some sort of alleged "associate-like" disclosure under its existing counsel's retention order. Specifically, on April 25, 2022, Mr. Fox filed a supplemental declaration with this Court pursuant to Bankruptcy Rule 2014 [ECF No. 56] (the "Fox Declaration"), pursuant to which Mr. Fox attested to "the circumstances regarding the inclusion and addition to [Mr. Fox's] law office of [Mr. Worms] acting as a per diem and associate attorney." *See* Fox Decl. ¶ 1. Mr. Fox attested that Mr. Worms' "services are primarily related to litigation-based matters including pleadings, discovery, trial preparation and other such litigation-based matters." *See id.* ¶ 2.

8. Mr. Fox disclosed a single engagement of Mr. Worms related to the Debtor and its principal: an undefined "State Court litigation" in which Mr. Worms represented the Debtor, Hello Nostrand, LLC (*i.e.*, the Debtor's subsidiary), and Mr. Karp. *See* Fox Decl. ¶ 3. In an effort to mitigate against a conflict, Mr. Fox explained that Hello Nostrand and Mr. Karp waived any conflict. *See id.* ¶ 5. Furthermore, Mr. Fox attested that Mr. Worms' activities "will not be directed towards the Plan and Disclosure Statement proceedings in th[e] case." *Id.* ¶ 5.[1]

---

[1] The Fox Declaration annexed a declaration of Mr. Worms, dated April 25, 2022 (the "Worms April 25 Declaration"), attesting to similar statements included in the Fox Declaration and a declaration from Mr. Karp regarding the conflict waiver on behalf of himself and the subsidiary.

3

9. Mezz Lender repeatedly informed Debtor that it did not believe an "associate-like" disclosure under Bankruptcy Rule 2014 was sufficient for Mr. Worms' engagement in the case, particularly since Mr. Worms continued to practice under his own law firm's letterhead, e-mail and the like. Moreover, Mezz Lender explained that it found other cases in which Mr. Worms represented Mr. Karp and other entities affiliated with him that were nowhere disclosed in the Fox Declaration or Worms April 25 Declaration.

10. On May 25, 2022, this Court held a hearing to consider, among other things, Mezz Lender's Dismissal/Lift Stay Motion. At that hearing, Mezz Lender's counsel raised with this Court its concerns about Mr. Worms' engagement and the lack of required disclosures. The Court thereafter instructed Debtor's counsel to file the appropriate paperwork for Mr. Worms to be retained and to notice his retention for a hearing.

B. Debtor's Second Attempt to Retain Mr. Worms

11. On Friday evening, June 10, 2022, Debtor filed its retention application for Mr. Worms *via* notice of presentment [ECF No. 108] (the "Worms Retention Application"), on three days' notice ahead of the June 13 hearing.

12. Pursuant to the Worms Retention Application, the Debtor seeks to retain, under Section 327(a) of the Bankruptcy Code, Mr. Worms as co-counsel (no longer as an associate of Mr. Fox's law firm) "*nunc pro tunc* to April 12, 2022, to handle litigation that the Debtor anticipates with respect to the administration of th[e] Chapter 11 Case." Worms Retention App. ¶ 8.[2]

---

[2] The Worms Retention Application also cites to Section 327(e) as a basis to retain Mr. Worms, though provides no information as to how Section 327(e) is the appropriate provision under the Bankruptcy Code for Mr. Worms' retention.

4

13. Notably, unlike the Debtor's initial attempt to retain Mr. Worms where he was specifically carved out of representing Debtor in connection with the Debtor's chapter 11 plan process as a result of potential conflicts, *see supra* ¶ 8, the Worms Retention Application expressly provided that Mr. Worms would be retained for litigation services "including, but not limited to the Chapter 11 plan of reorganization process." Worms Retention App. ¶ 8; *see also id.* ¶ 15(g) (including as services Mr. Worms would render to include "taking any necessary action on behalf of the Debtor to assist in obtaining approval of a disclosure statement and prompt confirmation of a Chapter 11 plan").

14. The Worms Retention Application did not include any engagement letter with Mr. Worms to understand the scope of his engagement. Instead, the Application includes a bullet-point list of general services Mr. Worms would perform on behalf of the Debtor that would generally allow Mr. Worms to perform much of the same services that Mr. Fox was engaged to perform. *See id.* ¶ 15. Moreover, the Application provides that Mr. Worms could be engaged to perform additional tasks as the need may arise, which would be disclosed in the future under Bankruptcy Rule 2014 if and when it is determined that disclosure would not "reveal privileged information or compromise the Debtor's abilities to perform its statutory responsibilities under the bankruptcy Code." *See id.* ¶ 16.

15. With respect to Mr. Worms' disinterestedness, the Worms Retention Application simply states that the Debtor believes he is disinterested and annexes a declaration from Mr. Worms (the "Worms June 10 Declaration") to that effect. The Worms June 10 Declaration provides no information concerning Mr. Worms' engagement by Mr. Karp and his other entities.

16. On June 13, 2022, this Court held a status conference, at which time both Mezz Lender and the U.S. Trustee raised with this Court issues concerning the Debtor's attempt to retain

5

Mr. Worms on three days' notice (over a weekend). Moreover, Mezz Lender's counsel explained that Mr. Worms' affidavit was lacking in disclosures and suggested that Mr. Worms supplement his declaration with a schedule of all the cases in which he was retained by Mr. Karp and his affiliated entities.

17. The Court declined to consider the Worms Retention Application at the status conference and instructed Debtor's counsel to re-notice it. Mr. Worms, who joined the June 13 status conference, also committed to file a more fulsome declaration.

C. Debtor's Third Attempt to Retain Mr. Worms

18. On June 27, 2022, approximately five minutes before the start of another status conference, Mr. Worms filed a supplemental declaration, dated June 24, 2022 in support of his retention [ECF No. 111] (the "Worms June 24 Declaration"). For the first time since his involvement with the Debtor's bankruptcy case, Mr. Worms disclosed fifteen actions in which he represented Mr. Karp and his various companies in court actions. *See* Worms June 24 Decl. ¶ 5. As disclosed in the Worms June 24 Declaration, at least three of the actions involved the Debtor and/or the underlying property owned by Debtor's subsidiary, Hello Nostrand.

19. At the June 27 status conference, the U.S. Trustee explained its concerns about having the Worms Retention Application approved on such short notice. Moreover, it voiced concerns about Mr. Worms representing the Debtor regarding litigation when he clearly would be conflicted to prosecute claims against Mr. Karp and his entities.

20. The Court ultimately refused to consider the Worms Retention Application due to the inadequacy of time for parties in interest and urged Mr. Worms to clarify the scope of his engagement.

D. Debtor's Current Attempt to Retain Mr. Worms

ACTIVE 66027748v2

21. On June 29, 2022, Mr. Worms filed a second supplemental declaration in support of his retention [ECF No. 112] (the "Worms June 29 Declaration"). In it, Mr. Worms attests that his retention "would be limited to litigate, on behalf of the Debtor, [the Dismissal/Lift Stay Motion], and adversary proceedings that the Debtor may commence in connection with this Chapter 11 case, *provided that* **in no circumstances would I participate in the evaluation and litigation where Mr. Eli Karp and the entity in which he has an interest may be defendant(s)**." Worms June 29 Decl. ¶ 2 (emphasis supplied).

## OBJECTION

22. Pursuant to Section 327(a) of the Bankruptcy Code, a debtor, with the Court's approval, "may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code." 11 U.S.C. § 327(a). The Bankruptcy Code defines "disinterested person" to mean a person that, among other things, "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." *Id.* § 101(14) (emphasis added).

23. While the Bankruptcy Code does not define "hold or represent an interest adverse to the estate," courts in this Circuit usually employ the following two-prong definition:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

In re AroChem Corp., 176 F.3d 610, 623 (2d Cir. 1999).

24. Taken together, Mr. Worms has the burden to demonstrate that he does not hold or represent anyone with an interest adverse to the Debtor's estate, or possess a predisposition of bias.

7

25. Mr. Worms has effectively acknowledged that he has a conflict representing the Debtor in connection with any litigation concerning Mr. Karp and his affiliated entities (which would include, for instance, Hello Nostrand, Supreme Builders and Hello Investors). The Debtor may very well have claims against parties, mainly Mr. Karp. Moreover, any other action commenced by the Debtor against another party will, most likely, result in a cross-claim against Mr. Karp or one of his entities. Yet, Mr. Worms cannot and will not, by his own declaration, represent the Debtor in connection with this work.

26. The import of this conflict would effectively disqualify Mr. Worms in representing the Debtor in connection with any suit brought against Mezz Lender. As the Debtor discussed in its draft disclosure statements, the Debtor believes that it has a material claim against Mezz Lender in connection with a 2020 forbearance agreement that Hello Nostrand and Mr. Karp executed. Due to Mr. Worms' admitted conflict, he is not investigating claims the Debtor may have against these parties for the forbearance agreement. Nor would Mr. Worms be able to effectively represent the Debtor in the event these parties are joined to, or implicated in, an adversary proceeding brought against Mezz Lender.

27. In addition, Mr. Worms cannot effectively represent the Debtor in connection with prosecuting its chapter 11 plan, which proposed drafts were all filed with the clear, intended goal of benefiting Mr. Karp and not the Debtor' estate. As noted above, the Debtor sought to engage Mr. Worms solely for the pending Dismissal/Lift Stay Motion, but not with respect to the Debtor's chapter 11 plan proceedings. *See* Fox Decl. ¶ 5 (attesting that Mr. Worms' activities "will not be directed towards the Plan and Disclosure Statement proceedings in th[e] case"). Yet, the latest Worms Retention Application provides for the exact opposite and expressly permits Mr. Worms to represent the Debtor in connection with chapter 11 plan proceedings.

ACTIVE 66027748v2

28.     It is quite troubling that the scope of Mr. Worms' engagement is nowhere concretely defined and, Debtor simply carves out any troubling engagement on an *ad hoc* basis whenever faced with any resistance.[3] For instance, pursuant to the Worms Retention Application, Mr. Worms was originally going to represent the Debtor in connection with *all* litigation services. It was only after the U.S. Trustee raised issues with his representation of Mr. Karp – issues that the Debtor has known since at least April 20, 2022 when Mezz Lender raised similar concerns – that Mr. Worms agreed to carve such services out of his engagement. Similarly, it was only after the Mezz Lender raised issues about Mr. Worms' representation of the Debtor in connection with the chapter 11 plan proceedings (because Mr. Karp was the clear beneficiary of any such plan), did Mr. Worms originally agree to carve such services out of his engagement.

29.     Moreover, it is worth noting that the Debtor has filed somewhat contradicting statements regarding the source of compensation for Mr. Worms, which could separately give rise to an adverse interest in the case. In the Worms June 10 Declaration ¶ 13 and Worms June 24 Declaration ¶ 8, Mr. Worms attested that "[n]o promises have been received by [him] as to compensation in connection with this Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code."

30.     Yet, in the second amended disclosure statement [ECF No. 81] and third amended disclosure statement [ECF No. 107], the Debtor disclosed that the "professionals agreed" to get paid from the Debtor's investors if its chapter 11 plan is confirmed*:*

> The professional claims shall be paid by the investors to the project as part of a capital call as provided in the Operating Agreements. The professionals agree to this treatment as part of this Plan submitted by the Debtor, as long as this Plan is confirmed by the Court.

---

[3] The Worms Retention Application provides a laundry list of services Mr. Worms is being engaged to perform, with the ability to add more services as the case progresses.

9

Third Amended Disclosure Statement ¶ 27; Second Amended Disclosure Statement ¶ 27.

31. Thus, Mr. Worms' ability to get paid from this insolvent estate depends heavily on the success of the Debtor's ability to confirm a chapter 11 plan – which draft plans have all been filed with the clear purpose of preserving Hello Investors' (an entity against which Mr. Worms cannot be adverse because of Mr. Karp's ownership interest) equity in the Debtor. As such, Mr. Worms is incentivized to prosecute whatever chapter 11 plan Mr. Karp is proposing on behalf of the Debtor irrespective of better alternatives that may exist for Debtor's creditors.

32. The Debtor is separately represented by Mr. Fox who can prosecute the Debtor's litigation strategy or otherwise retain a truly, disinterested attorney to assist him in any litigation.

## CONCLUSION

WHEREFORE, Mezz Lender respectfully requests that this Court deny the Worms Retention Application, with prejudice.

Dated: July 5, 2022
New York, New York

Respectfully submitted,

/s/ *Alan J. Brody*
Alan J. Brody
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone:    (973) 443-3543
Facsimile:    (973) 295-1333
Email:    BrodyA@gtlaw.com

- and -

Leo Muchnik
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:    (212) 801-9200
Facsimile:    (212) 801-6400
Email:    MuchnikL@gtlaw.com

*Attorneys for Nostrand Mezz Lender LLC*

ACTIVE 66027748v2