UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

```
--------------------------X  Case No.:  21-22696-shl
IN RE:                     .  Chapter 11
                           .
HELLO LIVING DEVELOPER      .  300 Quarropas Street
NOSTRAND LLC,              .  White Plains, New York 10601-4140
                           .
          Debtor.          .  Date:  July 7, 2022
--------------------------X  Time:  2:37 p.m.- 3:03 p.m.
```

**21-22696-shl**   Hello Living Developer Nostrand LLC   ***Ch. 11***

Case Management Status Conference

Doc. #42 Motion To Approve Motion Seeking Conditional Approval of Disclosure Statement, to Combine Final Hearing on Disclosure Statement and Confirmation, Approving the Form of Ballot and Fixing the Date for Objections to the Disclosure Statement and Confirmation

Doc. #45 Motion To Dismiss Case Or Alternatively, Motion For Relief from The Automatic Stay

Doc. #108 Application To Employ Victor Worms, Esq. As Co-Counsel To Debtor

HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

VIRTUAL APPEARANCES (VIDEO-ZOOM.GOV):

```
FOR THE DEBTOR        LEO FOX, ESQ. [Video-Zoom.Gov]
HELLO LIVING          630 Third Avenue, 18th Floor
DEVELOPER LLC:        New York, New York  10017

                      ELI KARP, CEO, PRINCIPAL [Video-Zoom.Gov]
                      17 Tokay Lane
                      Monsey, New York  10952

FOR THE DEBTOR        VICTOR A. WORMS, ESQ. [Video-Zoom.Gov]
HELLO LIVING          Law Offices of Victor A. Worms
DEVELOPER LLC:        65 Broadway, Suite 750
                      New York, New York  10006
```

*Proceedings digitally recorded.*
*Transcript produced by:  Catherine M. Griffin*

*American Legal Transcription*
*11 Market Street - Suite 215 - Poughkeepsie, NY 12601*
*Tel.: (845) 452-3090 - Fax: (845) 452-6099*
AmericanLegalTranscription.com

VIRTUAL APPEARANCES (VIDEO-ZOOM.GOV, *CONT'D*):

FOR NOSTRAND MEZZ        ALAN BRODY, ESQ. [*Video-Zoom.Gov*]
LENDER LLC:              Greenberg Traurig, LLP
                         500 Campus Drive, Suite 400
                         Florham Park, New Jersey  07932

                         LEO MUCHNIK, ESQ. [*Video-Zoom.Gov*]
                         Greenberg Traurig, LLP
                         One Vanderbilt Avenue
                         New York City, New York  10017

                         JEFFREY SIMPSON, PRINCIPAL [*Video-Zoom.Gov*]
                         15 West 27th Street
                         New York, New York  10001

THE U.S. TRUSTEE:        TARA TIANTIAN, ESQ. [*Video-Zoom.Gov*]
                         Office of the United States Trustee
                         201 Varick Street
                         New York, New York  10014

ALSO VIRTUALLY PRESENT (VIDEO-ZOOM.GOV, LISTEN ONLY):

FOR INTOO NOSTRAND       HANH VINH HUYNH, ESQ. [*Video-Zoom.Gov*]
HELLO LIVING, L.P.       Rubin LLC
                         345 Seventh Avenue, 21st Floor
                         New York, New York  10001

FOR UNKNOWN PARTY:       JAKE GOLDSTEIN, ESQ. [*Video-Zoom.Gov*]
                         211 East 43rd Street
                         New York, New York  10017

FOR UNKNOWN PARTY:       UDAY GORREPATI [*Video-Zoom.Gov*]
                         N/A (ABI Project)
                         2725 Turtle Ridge Drive
                         Bloomfield Township, Michigan  48302

I N D E X

                                                                PAGES

DISCUSSION RE AGENDA ON TODAY'S CASE MANAGEMENT CONFERENCE:    5

DEBTOR'S RESPONSE TO INQUIRY RE STATUS/DEVELOPMENTS:           7

MEZZ LENDER'S RESPONSE TO INQUIRY RE STATUS/DEVELOPMENTS:      8

MOTION TO DISMISS/MOTION FOR RELIEF FROM STAY, DOC #45

    Motion:      Mr. Fox                                       7

    Response:    Mr. Brody                                     8

    Ruling:      The Court      [*granted in its entirety*]   11

    Response:    Ms. Tiantian                                 20

COURT SCHEDULES HEARING ON RECITATION OF LIFT STAY RULING:    22

In Re Hello Living Developer Nostrand LLC                    4
July 7, 2022

1        (Proceeding commences at 2:37 p.m.)

2        THE COURT:  Good afternoon.  This is Judge Sean Lane

3  in the United States Bankruptcy Court for the Southern District

4  of New York.  And we're here for hearings at 3 -- I'm sorry,

5  2:30 and 3:00.  The matter on for 2:30 is Hello Living

6  Developer Nostrand.  So let me get appearances first from the

7  Debtor.

8        MR. FOX (Video):  Good morning, Your Honor.  Leo Fox

9  -- good afternoon, Your Honor.  Leo Fox, representing the

10 Debtor.  And with me is Mr. Karp, the Principal of -- and

11 managing member of the Debtor.

12       THE COURT:  All right.  I also see Mr. Victor Worms

13 on the Zoom as well?

14       MR. WORMS (Video):  Yes, Judge.  I'm appearing here

15 waiting the Court's approval to represent the Debtor in this

16 matter.

17       THE COURT:  All right.  And let me find out who's

18 here for the Mezz Lender?

19       MR. BRODY (Video):  Good morning, Your Honor.  Alan

20 Brody, Greenberg Traurig, on behalf of Nostrand Mezz Lender

21 LLC.  And with me today is my colleague, Leo Muchnik.  My

22 client who has appeared in all the hearings, Mr. Simpson, is

23 trying to get on the Zoom hearing.

24       THE COURT:  All right.  And also from the U.S.

25 Trustee's Office?

1           MS. TIANTIAN (Video):  Good afternoon, Your Honor.

2   Tara Tiantian, for the United States Trustee.

3           THE COURT:  All right.  And in abundance of caution,

4   I'll ask whether there's anybody else who is here for today's

5   hearing at 2:30 in Hello Living.

6           MR. HANH VINH HUYNH:  Good afternoon, Your Honor.

7   Hahn Huynh, from Rubin LLC, on behalf of the interested parties

8   Intoo Nostrand Hello Living, L.P.  I'm here just to monitor and

9   report back to Mr. Rubin, as he will be advising the client.

10  Thank you, Your Honor.

11          THE COURT:  All right.  Thank you.

12    DISCUSSION RE AGENDA FOR TODAY'S STATUS CONFERENCE HEARING

13          THE COURT:  All right.  So today is a sequella of

14  sorts to the many and various hearings that we've had in the

15  case recently.  And so if -- if I'm remembering my dates

16  correctly, I think we were here on June 27th, June 13th, June

17  2nd, and I think the conversations have revolved around two

18  things.

19          One is the motion that was filed by Mezz Lender

20  seeking dismissal and/or stay relief that was granted in part

21  on June 2nd and any follow-up to that motion.  And the second

22  is the issue of Mr. Worms' retention that has been the subject

23  of -- of continual discussion, as well as additional pleadings

24  that have been filed.

25          I think when we last got together, there was a

*American Legal Transcription*

1   supplemental declaration that had just been filed.  And I

2   thought it wasn't appropriate to dive into that, given -- given

3   the time.  So that's where we are.  So I think at the last

4   couple of conferences, there have been discussion about what

5   else would happen on the motion to lift stay.

6          On June 2nd, I partially lifted the automatic stay up

7   to, but not including, the foreclosure of the ownership

8   interests to allow the state court proceedings to go forward;

9   and I didn't lift it in its entirety because frankly, you

10  always want give parties in a bankruptcy case an opportunity to

11  have ongoing discussions to see if they can reach commercially

12  sensible resolutions.

13         And so that's why it wasn't lifted in its entirety.

14  I think at the last hearing, there was a discussion or a

15  question asked about, well, are we gonna have another hearing;

16  are we gonna have argument; are we gonna have briefing?  And I

17  think I told folks, no, we all -- we've already had that.  I

18  think lifting the stay -- partially but not completely, as

19  sometimes the road to hell is paved with good intentions -- the

20  intention was -- was -- was to give the parties a chance to

21  negotiate.

22         But it -- it wasn't essentially have a -- a redo.  So

23  the only thing I think that I said I was -- I would be

24  interested in hearing is if there were any developments that

25  had occurred since the time of the initial ruling on June 2nd.

*American Legal Transcription*

1  And my sense is that there haven't been any.  So -- so with all

2  that said to set the stage, I will turn it over to -- to Mr.

3  Fox, if they're -- to just sort of give me an up-to-date view

4  on status.  And then I'll hear from the Mezz Lender on that

5  same question.

6              DEBTOR'S RESPONSE TO STATUS OF PROCEEDINGS

7              MR. FOX:  Okay.  Yes, Your Honor.  Leo Fox speaking.

8  We met telephonically with the Principals of -- of the Mezz

9  Lender last week.  I cannot say that it was a constructive

10 conversation that actually nothing transpired.  However

11 recently, I understand there had been discussions, which my

12 client advises seemed to be very productive in the sense that

13 for the first time, there seems to be a possibility of some

14 possible resolution of this matter.

15         From an economic standpoint, I think that Your Honor

16 was alluding to, and I don't want to get involved in the

17 specifics of it, but it certainly would involve a exchange of

18 funds to -- to the Mezz Lender and in furtherance of the

19 process of development of the property.

20         And I can't say anymore because Mr. Dougherty's

21 giving a look I think.  So I will just simply say, Your Honor,

22 based on that, I feel that they probably for the first time

23 since we've had these discussions appear to be some way

24 forward, which could ultimately result in a successful

25 resolution of the -- of the entire Chapter 11.

1    Having said all that, Your Honor, in the event as I

2   anticipate that Mr. Brody may not agree with some of the

3   assessments, we stand ready, willing, and able to pay off the

4   entire mezz loan, including the principal and the interest as

5   this Court determines.

6        THE COURT:  Well, all right.  Thank you very much.

7        Mr. Brody, (inaudible) --

8    SECURED LENDER'S RESPONSE TO INQUIRY RE STATUS/DEVELOPMENTS

9        MR. BRODY:  :  Thank you, Your Honor.  Alan Brody, on

10  behalf of Nostrand Mezz Lender, LLC.  Your Honor, I do not

11  agree with Mr. Fox's statement at all.

12       Your Honor, this case has been before you for over

13  six months.  You partially lifted the stay over a month ago.

14  Yes, the parties have spoke.  The parties will continue to

15  speak, but it's a vast canyon between the positions at this

16  point.  We have provided Mr. Fox with a payoff statement weeks

17  -- over a week ago.  So his statement that they're "ready,

18  willing, and able to pay" the mezz is just -- we don't believe

19  it to be true in any way.

20       Your Honor, we're all for trying to settle this.  And

21  Your Honor has bent over backwards to try to get the parties

22  together, and we appreciate that.  That is not to say that the

23  parties cannot continue to talk.  As we move forward towards

24  the foreclosure, Your Honor, we ask that the Court enter final

25  stay relief now.

1   As we said in the other -- at the last hearing, we

2   believe that without final -- an order allowing final stay

3   relief, we're impeded from going forward in -- in respect to

4   potential buyers, it may -- it may hinder potential buyers from

5   coming in knowing that the -- the carpet could be pulled right

6   from under them -- the rug could be pulled right from under

7   them.

8   But again, Your Honor, this doesn't stop the parties

9   from continuing to talk.  We could run a parallel track.  We're

10  all for trying to get something done.  That's a practice

11  solution.  But the Debtor has had every opportunity.  Last --

12  it's taken for -- last week, we provided them with a pre-

13  negotiation agreement so that we could have discussions with

14  others as part of this process.  It took them five days to sign

15  it.

16  It is an incredibly slow and painstaking process with

17  this Debtor.  And we believe that the only way at this point --

18  after again, what is over a month since Your Honor lifted the

19  stay to allow us to begin the foreclosure process -- the only

20  way is that we have some finality with respect to stay relief.

21  But we ask the Court to grant that final stay relief.

22  THE COURT:  Okay.  Mr. Worms, I -- I have one Counsel

23  weighing in.  And I -- I don't have you formally retained yet.

24  So, I see you raising your hand.  I'll -- I'll give you a brief

25  opportunity to speak; but again, I -- I -- I think Mr. Fox

In Re Hello Living Developer Nostrand LLC                10
July 7, 2022

1  covered what needed to be covered.  But briefly?

2          MR. WORMS:  Judge, what I would suggest is that the

3  Court address the motion of my retention, so that I could

4  actually contribute to this discussion because a lot of

5  statements have been made by Mr. Brody which are entirely not

6  true.  And his (inaudible) --

7          THE COURT:  Well, well the statements are about the

8  -- the status of negotiations.  And I'm not involved in the

9  status of negotiations.  So -- and -- and I've found that when

10 people don't agree about how successful negotiations are, then

11 that means they haven't been particularly successful; right?

12 So it' just -- it assumes -- it just -- it just proves the

13 fact.

14          So, if people reach agreements or -- or have

15 traction, then they do.  And they -- they -- they both tend to

16 be on the same page.  And if they haven't, then they haven't.

17 So there's really nothing to prove, and that -- that's not, you

18 know, again, I'm -- I'm not -- courts are not in the business

19 of -- of -- of getting into that.  So what do you want me to

20 do; to figure our whether Mr. Brody's wrong about whether his

21 client's enthused about things?  I -- I -- I'm not -- I'm not

22 sure --

23          MR. WORMS:  No, Judge --

24          THE COURT:  -- so -- so -- so -- and, Mr. Worms, not

25 -- not to be curt about this, but you haven't been able to

1 speak at these hearings because your retention application

2 process has been nothing short of a disaster, and there's -- in

3 -- in terms of a drip, drip, drip over time of disclosure and

4 inconsistent statements.

5          And so, I'm -- I'm sorry you can't appear today and

6 to talk on the issue of stay relief, which again has already

7 been argued.  So -- but -- but there have been lots of issues

8 raised since your retention.  So they are what they are.  And I

9 think Mr. Fox has covered it.

10     RULING ON SECURED LENDER'S MOTION FOR FINAL STAY RELIEF

11          THE COURT:  So let me tell you -- let me address stay

12 relief.  So, I -- I -- I am going to grant the request to lift

13 the stay completely for the same reasons essentially as I

14 granted it in part.  And again, I gave folks an opportunity to

15 negotiate, and that's why I did what I did.  And maybe -- maybe

16 that sent a more confusing message than it should've, but be

17 that as it may.

18          There is one complicating factor, however, as you may

19 or may not be able to tell by my fuzzy background, I am sitting

20 in my house.  I'm sitting in my house because I have COVID.

21 And -- and because of that, I do not have available my file for

22 most things, including this case.  So I'm not in a -- I have

23 sitting in my office a hand-notated bench ruling, which I don't

24 currently have access to -- and so, I'm not in a position to

25 give a full-blown recitation of -- of -- of -- for a bench

In Re Hello Living Developer Nostrand LLC                12
July 7, 2022

1  ruling that I would ordinarily do at this point in time.

2          And so, that means that the time schedule that I set

3  out for Mr. Brody at the last hearing is -- is -- is -- is I

4  can only give him a half a loaf.  But what that means is that I

5  expect I will be able to do that either Friday or Monday,

6  depending on circumstances or I suppose as late as Tuesday.

7  But -- but what that means is that I'm telling you what my

8  intention is; is to lift the automatic stay completely.

9          We had a discussion about the economics of the case

10 and the issues in the case already.  But again, I don't think I

11 gave you a full-blown ruling, because I think at the last

12 hearing, it was largely understood that that's -- that's where

13 we were headed.  And I think I've even asked Mr. Fox whether a

14 full-blown recitation of everything was -- was appropriate.

15 But I think at this point it is, and so I need to do that.

16          But again, I don't wanna -- I don't wanna offer a

17 false sense of hope or -- or a mixed message to the extent I've

18 already offered one where lifting the stay partially.  I am

19 gonna lift the stay.  It is gonna be lifted completely.  And I

20 will be in a position to give you that bench ruling in the next

21 couple of business days.

22          And as I try to figure out the details for that, I

23 will make sure that my chambers is in touch to schedule a time

24 to actually read the bench ruling; whether it's Friday; whether

25 it's Monday or whether it's Tuesday -- I can't imagine it'll be

1 any later than that -- but such is the -- the -- the -- yet

2 another joy of the pandemic.  So my apologies for being

3 slightly -- throwing you a slight curve ball.

4          So -- and to segue to -- to the other issue of Mr.

5 Worms' retention, there -- we can have a -- a lengthy

6 discussion no doubt about all the intricacies of exactly what

7 he's gonna do, what he's not gonna do, whether the conflicts

8 that -- that clearly exist are -- are disqualifying or not, but

9 I -- I end up having concerns that are -- are far more basic

10 than that is:

11          When lifting the stay, I'm not sure that it's

12 appropriate to retain somebody other than Mr. Fox in this case

13 at this point, given where the case is.  And -- and given the

14 potential for overlap, and given -- given just -- just where --

15 what actually is left to be done.

16          So indeed, you can make an argument that -- that with

17 the stay lifted that there may be actually no legitimate

18 bankruptcy purpose left for this case, given that it's

19 essentially a two-party dispute.  So I have those fundamental

20 questions as well.  And so, I -- I thought it only fair to

21 throw that out there.

22          Now, there may be litigation that people are

23 interested in -- in filing.  I couldn't again tell based on the

24 back and forth as to whether -- what the intent is.  I've been

25 told various things, and various papers don't sort of -- don't

1  line up with other papers as to what Mr. Worms would be

2  retained for.  But -- but again, there's some sort of more

3  fundamental problems if I'm lifting the stay as to whether, at

4  this hour, it makes sense to have a second counsel at all.

5          So, my thought would be to put a pin in that issue

6  for the moment.  Wait 'til I read my bench ruling on stay

7  relief, and then have a conversation.  In the meantime, you can

8  ponder whether frankly it's worth fighting over, the issue of

9  Mr. Worms' retention at all.  And if it is, and you all decide

10  to go to the mat on that, so to speak, then we can have that

11  discussion.

12          But -- but I -- I do have some fundamental questions

13  that are -- are not particularly subtle about -- about the

14  issue of the retention.  So -- so that's where I am.  And with

15  that, let me hear from -- I'll -- I'll circle the room -- Mr.

16  Fox?

17          MR. FOX:  Yes, Your Honor.  I appreciate what the

18  Court is saying with respect to the grant of the lift stay.

19  What you heard Mr. Brody last time and this time say, the real

20  reason he wants the stay lifted so he can induce buyers --

21  third-party buyers to come in and purchase --

22          THE COURT:  No, no, no, what I heard is that --

23          MR. FOX:  I --

24          THE COURT:  -- what -- what -- what was argued in

25  front of me is whether there's a basis to lift the stay.  And

In Re Hello Living Developer Nostrand LLC          15
July 7, 2022

1   I've already lifted the stay in (inaudible) --

2          MR. FOX:  I understand that, Your Honor.  I'm

3   (inaudible) --

4          THE COURT:  -- for those -- for those reasons.  So --

5          MR. FOX:  I understand, Your Honor.  (Inaudible) --

6          THE COURT:  -- whether Mr. Brody's client has agendas

7   that go beyond the lifting of the stay, I have no doubt he

8   does, so --

9          MR. FOX:  I appreciate that --

10         THE COURT:  -- I don't know that any of that impacts

11  the -- the lift stay rule -- ruling.

12         MR. FOX:  Only in one respect, which is that if in

13  fact their intention is to sell this to a third-party.  And

14  there exists, I think our papers reflect, substantial

15  objections to their claim that they in fact agree not to

16  credit-bid at the foreclosure sale and sell it to a third-

17  party.

18         THE COURT:  Well -- well, the -- the -- the

19  foreclosure sale --

20         MR. FOX:  (Inaudible)

21         THE COURT:  -- is a state court issue; right?  So,

22  some people --

23         MR. FOX:  But you could (inaudible), Your Honor --

24         THE COURT:  -- you know, it's not in -- it's not in

25  front of me, and so everybody retains whatever rights they

1   would have in connection with that foreclosure sale.

2        MR. FOX:  Well, Your Honor, then we would like to

3   entertain -- have this Court entertain the fact that the stay

4   could be lifted for whatever limited purposes as Your Honor's

5   already done up until the sale.  You could lift --

6        THE COURT:  But I -- I already did that.

7        MR. FOX:  All right.  (Inaudible) --

8        THE COURT:  I already did that.

9        MR. FOX:  No.  I appreciate that, but I'm -- what I'm

10  trying to illustrate is is that your Court -- this Court has

11  the ability to condition what can go forward and how it can

12  (inaudible) --

13        THE COURT:  But -- but I've already done that, so I

14  don't need to make a ruling on that, because I've already made

15  that.  What Mr. Brody has asked, and I frankly kicked the can

16  down the road on a few occasions, is to lift the stay in its

17  entirety.  And -- and again, what -- what this shows is that I

18  -- I in -- in lifting the stay partially, I had a -- sense of

19  what I thought I was doing.  But clearly, other parties had a

20  different sense of what I was doing.

21        But the -- the -- there were grounds to justify the

22  lifting of the stay.  I conditioned the relief to allow people

23  to have a chance to have negotiations.  But if there's grounds

24  to lift the stay, there's grounds to lift the stay.  I can't

25  make anyone negotiate, or --

*American Legal Transcription*

In Re Hello Living Developer Nostrand LLC          17
July 7, 2022

1        MR. FOX:  No.  I appre --

2        THE COURT:  -- not.

3        MR. FOX:  -- I appreciate that, Your Honor.

4        THE COURT:  And -- and you all may reach a conclusion

5   or not.  But -- but again, that -- that's --

6        MR. FOX:  Well, Your Honor, then that (inaudible) --

7        THE COURT:  -- that is what it is.  And I like -- we

8   all like to see cases succeed.  And --

9        MR. FOX:  Your Honor --

10       THE COURT:  -- but, you know, I -- Creditors and

11  Debtors both have whatever rights they're granted under the

12  Bankruptcy Code to -- to -- to pursue.  So --

13       MR. FOX:  Your Honor, all I'm asking --

14       THE COURT:  -- again, this is somewhat of a stay of

15  execution because I -- I -- because I'm sitting in my

16  daughter's bedroom with -- with -- with COVID.  So, I can't --

17  I can't get you that ruling today.  But I -- I --

18       MR. FOX:  I appreciate that (inaudible) and I hope --

19       THE COURT:  -- intend to do that in the next few

20  (inaudible) --

21       MR. FOX:  -- and I hope you'll get well quickly and

22  without any kind of effect, Your Honor.

23       THE COURT:  I appreciate that --

24       MR. FOX:  That's not what I'm saying.  Your Honor,

25  all I was saying is, is that in fact that we reserve the right

*American Legal Transcription*

1  to say that the foreclosure sale should proceed without the

2  opportunity of the Secured Creditor to credit bid based on the

3  existence of objections (inaudible) --

4          THE COURT:  But the foreclosure -- what I'm -- and

5  I'm -- what I'm saying is the foreclosure sale is --

6          MR. FOX:  Preserving our rights, Your Honor, that's

7  all I'm saying.

8          THE COURT:  Okay.  All right.  I got it.  All right.

9  But I'm just saying that you're preserving your right in front

10 of a court who doesn't supervise the foreclosure sale; right?

11 So.

12         MR. FOX:  Well, Your Honor, that's true.  On the

13 other hand, Your Honor, if it's reflected, at least it would

14 prevent any party from arguing that -- that because this Court

15 lifted the stay, that meant that we're precluded from making

16 any arguments in connection with any foreclosure sale.  I think

17 -- I think that would be an appropriate quote to put in any

18 proposed order with respect to a final grant of lifting of the

19 stay.

20         THE COURT:  All right.  Mr. Brody?

21         MR. BRODY:  Your Honor, first of all, we -- we hope

22 that you get better.  That's the most important --

23         THE COURT:  Thank you.  I appreciate that.

24         MR. BRODY:  Yeah.  Of course, we don't agree with Mr.

25 Fox's statements in any way.  He's been saying these things now

1 for months, and months, and months.  As Your Honor said, it's

2 not before this Court.  That's really all that needs to be said

3 with respect to that.

4          THE COURT:  All right.

5          MR. FOX:  Okay.  Your Honor, I really wish that Mr.

6 Brody would stop his personal attacks with respect to whether

7 he (inaudible) --

8          THE COURT:  All right.  No, no, no; we're not --

9          MR. FOX:  Okay.

10          THE COURT:  -- we're not doing that --

11          MR. FOX:  (Inaudible) again, Your Honor --

12          THE COURT:  -- we're not having that conversation --

13          MR. FOX:  We're not gonna have it; I agree.

14          THE COURT:  -- I'm not having that conversation --

15          MR. FOX:  I agree, Your Honor.  I agree --

16          THE COURT:  So -- all right.

17          MR. FOX:  -- we agree.  We have asked, I haven't

18 heard a single statement --

19          THE COURT:  No, no, no, no, no.  Miss -- Mr. Fox,

20 your lips are still moving, which means you're still having

21 that conversation.  So we're not having that conversation.

22 So --

23          MR. FOX:  Okay.

24          THE COURT:  -- and so --

25          MR. FOX:  (Inaudible)

*American Legal Transcription*

In Re Hello Living Developer Nostrand LLC        20
July 7, 2022

1        THE COURT:  -- let me hear last, but not least from

2   the U.S. Trustee's Office.  I assume you have no objection to

3   -- to holding off on the retention discussion until after I

4   issue the formal bench ruling in the next couple of business

5   days and then we'll -- we'll see what there is left to discuss

6   on that retention application; is that -- is that right?

7        U.S. TRUSTEE'S RESPONSE RE LIFTING OF THE FINAL STAY

8        MS. TIANTIAN:  Yes.  Tara Tiantian, for the United

9   States Trustee.  I have no objection in holding off the

10  retention application.  But with respect to the lifting stay,

11  in my view, I agree with you, Your Honor, completely on the

12  fundamental questions.

13        Since the collateral, the Mezz Lender's collateral --

14  which is the ownership of the property holding company -- is

15  the only property of the -- of the Debtor, of the bankruptcy

16  estate, and if the stay is lifted completely as to Your Honor

17  just decided, then the consummation of the sale will be -- will

18  be occurring.

19        And the closing of the sale will be occurring;

20  meaning, the property -- meaning, the -- the shares, the

21  collateral will change hand, will become another person's

22  property, then there's no property of the estate; the

23  bankruptcy estate is physically empty.  So my view is if the

24  stay is lifted completely, and the mezz owner closed on the

25  foreclosure sale, then the case should be dismissed because

*American Legal Transcription*

1  there's no property of the estate; the bankruptcy estate is

2  empty.  That's my view.  Thanks.

3          THE COURT:  All right.  Mr. Worms?

4          MR. WORMS:  Just to be clear -- clear, Judge, that as

5  you've said with respect to any foreclosure under the UCC,

6  that's entirely a state court matter.  And nothing the Court

7  intends to do by lifting the stay would impair any litigation

8  before the state court.

9          THE COURT:  Well, I -- I don't bel -- well, listen, I

10  -- I do what I do; they do what they do.  I -- I always -- I

11  always pause a beat, however, when we spend too much time

12  talking about that phenomena of -- of federalism.  Because it

13  -- it doesn't really require any additional gloss on it.  And I

14  always get worried if I'm asked to make any statements about

15  it, that somehow those will be leverage.

16          So -- so my -- my view is to not say anything.  And I

17  do what I do, and they do what they do.  They don't need me to

18  tell them their job.  And -- and I don't need them to tell me

19  mine.  And so -- so, I think that's as -- as far as I'll go

20  with that.  So -- so what I would intend to do then is to get

21  you all -- you'll hear from chambers -- a date to -- to read

22  the bench ruling on -- into the record.

23          And again, I -- I hope to do that either on one of

24  the next three business days, Friday, Monday or Tuesday.  And I

25  appreciate everybody's patience and flexibility.  I know we've

1    been -- this -- this case has taken up quite a bit of your

2    calendars over the last few months, and so I appreciate your

3    additional flexibility.  There's quite a few people on the

4    phone.

5      COURT SCHEDULES HEARING ON RECITATION OF RULING ON LIFT STAY

6            THE COURT:  So, I will endeavor to get you that date

7    and time when I can.  And I -- I guess let me pick the latest

8    of those dates just as sort of a backdrop.  And just so I can

9    at least make sure everybody can make Tuesday the 12th; I --

10   I'm -- I'm happy to do it at -- at 10:00 or at 2:00.  And if

11   anybody has any conflict for either of those, let me know now,

12   and I'll -- I'll work around.

13           MR. BRODY:  Your Honor, first of all, thank you very

14   much.  I'm gonna be traveling.  And as long as my colleague,

15   Mr. Muchnik, can make it, that would be fine.

16           MR. MUCHNIK:  Good afternoon, Your Honor.  Yeah,

17   either time works for me.

18           THE COURT:  All right.  And --

19           MR. FOX:  (Inaudible)

20           THE COURT:  -- Mr. Fox?

21           MR. FOX:  I have an 11:00 hearing on Tuesday; I could

22   definitely do 2:00 if -- if that works --

23           THE COURT:  All right.

24           MR. FOX:  -- for the Court.

25           THE COURT:  All right.  And, Ms. Tiantian, any -- any

In Re Hello Living Developer Nostrand LLC                23
July 7, 2022

1    preference for you?

2            MS. TIANTIAN:  (No audible response)

3            THE COURT:  All right.  So let's say 2:00, on

4    Tuesday.  And we'll use that date and time unless you hear from

5    me and my chambers sooner about an earlier date, but at least

6    that way we have something sort of as a backdrop.  And I --

7    with that anything else from you, Mr. Fox?

8            MR. FOX:  No.  I just -- I wish you the best, and --

9    and health; that's it, Your Honor.

10           THE COURT:  Thank you.  I felt better, but -- but

11   frankly, I'm -- I'm -- I'm seem to be basically fine.  So -- so

12   if this is my big problem in life, life is not so bad.  So I

13   thank you for the good wishes, though.

14           Anything else, Mr. Brody?

15           MR. BRODY:  No, Your Honor.  I'm just glad to -- to

16   see that you're feeling good.

17           THE COURT:  Ms. Tiantian?

18           MS. TIANTIAN:  (No audible response)

19           THE COURT:  All right.  Thank you very much.  And

20   talk to you on Tuesday, at 2, if not before then.

21           MR. BRODY:  Thank you, Your Honor.

22           THE COURT:  Thank you, and be well.

23       (Proceeding adjourned at 3:03 p.m.)

24                           oOo

25

*American Legal Transcription*

```
 1                        CERTIFICATION

 2        I, Catherine M. Griffin, certify that the foregoing

 3   transcript of proceedings is a true and accurate record of the

 4   proceedings.

 5

 6        Catherine M. Griffin        Date:  July 27, 2022

 7        AMERICAN LEGAL TRANSCRIPTION

 8        11 Market Street, Suite 215

 9        Poughkeepsie, New York  12601

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```