UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

```
---------------------------X  Case No.:  21-22696-shl
IN RE:                      .  Chapter 11
                            .
HELLO LIVING DEVELOPER      .  300 Quarropas Street
NOSTRAND LLC,               .  White Plains, New York 10601-4140
                            .
          Debtor.           .  Date:  June 27, 2022
---------------------------X  Time:  2:07 p.m.- 2:33 p.m.
```

**21-22696-shl**   Hello Living Developer Nostrand LLC   ***Ch. 11***

Case Management Status Conference

Doc. #42 Motion To Approve Motion Seeking Conditional Approval of Disclosure Statement, to Combine Final Hearing on Disclosure Statement and Confirmation, Approving the Form of Ballot and Fixing the Date for Objections to the Disclosure Statement and Confirmation

Doc. #45 Motion To Dismiss Case Or Alternatively, Motion For Relief from The Automatic Stay

Doc. #108 Application To Employ Victor Worms, Esq. As Co-Counsel To Debtor

HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

VIRTUAL APPEARANCES (VIDEO-ZOOM.GOV):

```
FOR THE DEBTOR       LEO FOX, ESQ. [Video-Zoom.Gov]
HELLO LIVING         630 Third Avenue, 18th Floor
DEVELOPER LLC:       New York, New York  10017

                     ELI KARP, CEO, PRINCIPAL [Video-Zoom.Gov]
                     17 Tokay Lane
                     Monsey, New York  10952

THE U.S. TRUSTEE:    TARA TIANTIAN, ESQ. [Video-Zoom.Gov]
                     Office of the United States Trustee
                     201 Varick Street
                     New York, New York  10014
```

*Proceedings digitally recorded.*
*Transcript produced by:  Catherine M. Griffin*

*American Legal Transcription*
*11 Market Street - Suite 215 - Poughkeepsie, NY 12601*
*Tel.: (845) 452-3090 - Fax: (845) 452-6099*
AmericanLegalTranscription.com

VIRTUAL APPEARANCES (VIDEO-ZOOM.GOV, *CONT'D*):

FOR NOSTRAND MEZZ     ALAN BRODY, ESQ. [*Video-Zoom.Gov*]
LENDER LLC:           Greenberg Traurig, LLP
                      500 Campus Drive, Suite 400
                      Florham Park, New Jersey  07932

                      LEO MUCHNIK, ESQ. [*Video-Zoom.Gov*]
                      Greenberg Traurig, LLP
                      One Vanderbilt Avenue
                      New York City, New York  10017

                      JEFFREY SIMPSON, PRINCIPAL [*Video-Zoom.Gov*]
                      15 West 27th Street
                      New York, New York  10001

ALSO VIRTUALLY PRESENT (VIDEO-ZOOM.GOV, LISTEN ONLY):

FOR UNKNOWN PARTY:    JAKE GOLDSTEIN, ESQ. [*Video-Zoom.Gov*]
                      211 East 43rd Street
                      New York, New York  10017

FOR UNKNOWN PARTY:    UDAY GORREPATI [*Video-Zoom.Gov*]
                      N/A (ABI Project)
                      2725 Turtle Ridge Drive
                      Bloomfield Township, Michigan  48302

FOR WALL STREET       ANDREW SCURRIA [*Video-Zoom.Gov*]
JOURNAL:              15 Highwood Road
                      West Orange, New Jersey  07052

I N D E X

PAGES

DISCUSSION RE AGENDA ON TODAY'S CASE MANAGEMENT CONFERENCE:   5

DEBTOR'S RESPONSE TO INQUIRY RE STATUS:   5

MEZZ LENDER'S RESPONSE TO INQUIRY RE STATUS:   7

U.S. TRUSTEE'S RESPONSE TO STATUS & RETENTION APPLICATION:   10

MR. WORMS'S RESPONSES TO TRUSTEE'S COMMENTS RE RETENTION:   13

MEZZ LENDER'S RESPONSE TO TRUSTEE'S COMMENTS RE RETENTION:   15

COURT'S SUMMARY OF STATUS CONFERENCE, NEW DATE SCHEDULED:   16

1      (Proceeding commences at 2:07 p.m.)

2           THE COURT:  Good afternoon.  This is Judge Sean Lane

3    in the United States Bankruptcy Court for the Southern District

4    of New York.  And we're here for one matter at 2:00 and one at

5    2:30.  The first matter that's on for 2:00 is Hello Living

6    Developer Nostrand LLC, on for a continued hearing, as well as

7    case status conference.

8           And so let me find out who's here on behalf of the

9    Debtor.

10          MR. FOX (Video):  Good afternoon, Your Honor.  Leo

11   Fox, representing the Chapter 11 Debtor.  And Mr. Eli Karp is

12   on the phone with us.

13          THE COURT:  All right.

14          MR. FOX:  Mr. Victor Worms, as well.

15          MR. WORMS (Video):  I am here.  Victor Worms, Your

16   Honor, waiting the Court's approval for my retention as

17   litigation counsel.

18          THE COURT:  All right.  Good afternoon.

19          And let me find out who's here on behalf of the

20   Secured Creditor?

21          MR. BRODY (Video):  Good afternoon, Your Honor.  Alan

22   Brody, Greenberg Traurig, on behalf of Nostrand Mezz Lender

23   LLC.  Also with me today is my colleague, Leo Muchnik.  And

24   also on the Zoom, is the representative of Nostrand Mezz

25   Lender, Jeffrey Mr. Simpson.

1           Your Honor, Mr. Simpson is on a family vacation in

2   Europe; please excuse that he is not in a suit.  We thought it

3   was important, though, that he be at this hearing.

4           THE COURT:  I -- I appreciate his presence.  And

5   given that people are very eager to go on vacation after the

6   events over the last number of years, I -- I -- I'm only sorry

7   that he needed to -- to -- to interrupt his vacation for this

8   particular proceeding.  So with apologies to your family, sir,

9   happy to have you from Europe.

10          And let me find out who's here on behalf of the

11  United States Trustee's Office?

12          MS. TIANTIAN (Video):  Good afternoon, Your Honor.

13  Tara Tiantian, with the United States Trustee's Office.

14          THE COURT:  All right.  Good afternoon.

15          And in abundance of caution, is there anyone else who

16  needs to make an appearance in this case who has not yet done

17  so?

18          COUNSEL:  (No audible response)

19       DISCUSSION RE STATUS OF TODAY'S STATUS CONFERENCE

20          THE COURT:  All right.  So I think it makes sense to

21  start with status, and for that purpose, I will turn it over

22  first to Mr. Fox.

23          DEBTOR'S RESPONSE TO COURT'S INQUIRY RE STATUS

24          MR. FOX:  Yes, Your Honor.  The parties, through

25  their clients, met last week by -- by telephone.  And it was a

1  successful meeting.  And without discussing in -- in detail, or

2  discussing at all the merits, the Debtor, through its

3  Principals, offered nearly the entire amount that was due.

4          THE COURT:  Well, don't -- don't -- again, don't talk

5  about --

6          MR. FOX:  Okay.

7          THE COURT:  -- details --

8          MR. FOX:  All right.

9          THE COURT:  -- right?  I -- I think you -- I think

10  you just did.  But I -- I -- I'm -- I'm sure that I didn't hear

11  it (inaudible) --

12          MR. FOX:  Your Honor --

13          THE COURT:  -- so -- so I'll move on.

14          MR. FOX:  -- I apologize, Your Honor --

15          THE COURT:  But -- but just -- just process and to

16  the status.

17          MR. FOX:  So, Your Honor, the -- the discussions

18  related about different directions that we had previously

19  talked about, in an effort to try to arrive at what we call a

20  global resolution of the matter, and that didn't work, Your

21  Honor.

22          And there was a fair exchange -- and I don't want to

23  belabor it -- but in terms of dollars and sense, and ultimate

24  dollars and sense any -- of several different ways and none of

25  them were successful.  And after some time on the telephone,

1  the conversation terminated, and I won't to discuss how, but it

2  terminated.  And so here we are today, Your Honor, with no

3  resolution.  Although, I always thought there might be a

4  possibility.

5           THE COURT:  All right.

6           Mr. Brody, anything to add?

7           MR. BRODY:  Yes, Your Honor.  Thank you.

8       LENDER'S RESPONSE TO COURT'S INQUIRY RE STATUS

9           MR. BRODY:  Alan Brody, from Greenberg Traurig, on

10 behalf of the Nostrand Mezz Lender LLC.  Your Honor, a few

11 weeks ago, Your Honor lifted the stay to allow us to go forward

12 with the Article 9 foreclosure sale up to foreclosure.  In the

13 interim, we had a discussion between Mr. Fox, his client; and

14 our side with -- with Mr. Simpson as well.

15          Unfortunately, it -- the settlement discussions were

16 not fruitful at all.  There's a vast delta between the parties;

17 it's greatly unfortunate.  It's our position that Mr. Karp does

18 not see the reality of the situation, but that's not something

19 that we could help in any way.

20          So at this point, we are moving forward with the

21 foreclosure sale.  And we ask that Your Honor provide for, you

22 know, full stay relief, so that we could really conclude this

23 in some fashion.  That's where we are at this point, Your

24 Honor.

25          THE COURT:  So let me ask what the status of the

1  state court proceeding that's obviously not my day job, so I'm

2  -- I'm just curious where -- where things are, and what the

3  timeframe is for things in that court?

4          MR. BRODY:  Your Honor, we --

5          UNKNOWN SPEAKER:  (Inaudible) --

6          MR. BRODY:  -- we -- we have begun the marketing of

7  the property in accordance with the pre-petition decision of

8  the state court, and to make sure that it was approved for

9  marketing.  We believe that this will be accomplished within --

10  within the now what would probably be somewhere between a -- a

11  30- to 60-day window to conclude the Article 9 sale.

12          The issue, of course, that we have is, as we market

13  the property -- which we're doing -- which we've begun doing

14  now -- anybody that comes out that has the potential to make an

15  offer, we wanna ensure that they understand that any offer that

16  they make will be -- could be final.  And that the rug could

17  not be pulled from under them simply because we don't have the

18  full stay relief.

19          And at the last hearing, Your Honor had indicated

20  that this -- this was a continuation to get to the final

21  hearing of -- of the stay relief, as well as the motion to

22  dismiss.  So, it's why we think it's extremely important that

23  at this point we have full stay relief to conclude the Article

24  9 sale on the timing set forth by the state court.  That won't

25  stop the parties from continuing to talk, but I just don't see

1  where it's going at this -- based upon the last conversation

2  between the parties, Your Honor.

3          THE COURT:  All right.

4          All right.  Anything from the U.S. Trustee's Office?

5          MS. TIANTIAN:  Good afternoon, Your Honor.  Tara

6  Tiantian, with the U.S. Trustee's Office.  I don't have

7  comments with respect to the stay relief motion, and how the

8  case will -- will proceed.  I understand this is mainly a two-

9  party dispute; whichever party even -- eventually prevails,

10 that represents the -- I guess it's the fair decision as to how

11 the estate should be administered.

12         I do have comments on the retention application and

13 the supplemental disclosure; but other than that, I don't have

14 comments with respect to how -- how the case should proceed.

15 Thanks.

16         THE COURT:  All right.  I -- I -- I did see that the

17 -- the retention supplement that was discussed.  I guess --

18         MR. FOX:  Your Honor, I -- I (inaudible) --

19         THE COURT:  -- it was June 13th, when we last got

20 together.  Was (inaudible) --

21         MR. FOX:  Your Honor, excuse me.  I want to briefly

22 respond.  I think to Counsel's comments concerning the

23 (inaudible) --

24         THE COURT:  Mr. Fox, my -- my -- my lips are still

25 moving, so let me finish my sentence (inaudible) --

1          MR. FOX:  I'm sorry, Your Honor.  I apologize.

2          THE COURT:  So what I was going to say is that I saw

3   that there were things filed today dealing with the supplement

4   on the retention application.  Because it was filed today, I

5   didn't get a chance to read it yet.

6          So the question, miss -- Ms. Tiantian, is for the

7   U.S. Trustee's Office's, is whether in your view it's

8   productive to have a conversation on that, given -- given that

9   I haven't read it.  I -- I -- we could some -- sometimes those

10  things will go okay if -- if I haven't gotten a chance to read

11  it yet, but sometimes they won't.  I don't know if you have a

12  view one way or the other?

13      U.S. TRUSTEE'S OFFICE RESPONSE TO STATUS AND RETENTION

14         MS. TIANTIAN:  Thank you, Your Honor.  Tara Tiantian,

15  with the U.S. Trustee's Office.  First, I appreciate Mr. Worms

16  did a pretty thorough declaration in his representation of Mr.

17  Karp and his entity in state court.

18         I think it's pretty obvious that my biggest concern

19  is Mr. Worms' representation of Mr. Karp and his entities in

20  state court; and in fact, there are 15 representations.  And

21  some of them are concluded, and I (inaudible) focused on there.

22         It seemed to be five actions that are either ongoing

23  or -- or stayed, which I consider as pending.  And I -- I don't

24  believe that rep -- I don't believe representing equity holder

25  is disqualifying per se; it's really a case-by-case analysis.

In Re Hello Living Developer Nostrand LLC                    11
June 27, 2022

1  And in this case, I -- I think my concern is Mr. Worms'

2  representation of the estate in the context of avoidance

3  action.  The only scenario I can think of is that Mr. Worms

4  will be materially limited in evaluating which cause of action,

5  or avoidance action, or other causes of actions that could --

6  could be brought on behalf of the estate against Mr. Karp and

7  Mr. Karp's entity.

8          Because we know that Mr. Karp is the main Principal

9  and managing member of all these entities, all these real

10 estate entities.  And also, Mr. Karp and his entities are not

11 released from any estate's cause of actions under the plan.  So

12 I'm -- my main concern is that if the estate has a cause of

13 action against Mr. Karp or Mr. Karp's entity, I believe Mr.

14 Worms is not the best person to prosecute that action on behalf

15 of the estate.

16         And I think that -- and I do -- I read the -- I read

17 a -- the supplemental declaration.  It seems like Mr. Worms --

18 like on paragraph 7, (inaudible) so, again that's -- I -- I

19 guess my concern depends on the scope of Mr. Worms' work.  And

20 in paragraph 7 of Mr. Worms' declaration, it seems like his

21 main job is to do the stay motion and dismiss, motion to

22 dismiss.

23         And my view is that I did sign off actually back in

24 April, 'cause at that time, I believed, based on the Debtor's

25 representation, that Mr. Worms' job would be limited defending

1  motion to lift the stay and motion to dismiss.  And if his job

2  was limited to those two motions, I do believe Mr. Karp's

3  interest is aligned with the estate.  Because I believe miss --

4  Mr. Karp would want the case to be -- to stay in -- in

5  bankruptcy.

6          And -- but based on the -- the retention application

7  on presentment, in paragraph 15, it seems like Mr. Worms would

8  do (inaudible) all aspects of the case, which includes

9  prosecuting actions on Debtor's behalf.  So, I guess that just

10 goes -- goes back to my original point that my concern is Mr.

11 Worms will be limited in evaluating and prosecuting the

12 estate's cause of action against Mr. Karp and his entity.

13         I do note that there hasn't been a record about the

14 likelihood where -- if there's a -- there's such cause of

15 action, but I do want to note two points.  One, is that Mr.

16 Karp and his entities are not released from estate's cause of

17 action; and second, is that Mr. Karp is the main person, is the

18 main manager of all of his entities.

19         And I'm not accusing like anybody of any wrongdoing,

20 but it is not uncommon that for a real estate developer who

21 has, you know, multiple entities, multiple properties, to move

22 the funds around.  So that's my -- that's just based on my

23 prior experience; I'm not accusing anybody of anything.  That's

24 my (inaudible) on that.  Thanks.

25         THE COURT:  All right.

1    MR. WORMS:  May I be heard briefly, Your Honor?

2    THE COURT:  I'll -- well, let me ask, I don't know if

3  it's you or mister -- Mr. Fox who is going to address this or

4  both?  So, Mr. Fox, I -- I -- I -- I interrupted his statement

5  earlier, so let me hear first from him.  And he may pass the

6  baton right back to you, Mr. Worms.

7    Mr. Fox?

8    MR. FOX:  Your Honor, I -- I do have comments to make

9  but not about Mr. Worms' retention.  He's here.  He's best able

10 to respond to the U.S. Trustee's comments.  And I will submit

11 that he should be responding to these comments by the U.S.

12 Trustee as well.

13   THE COURT:  All right.  Mr. Worms?

14   MR. WORMS:  Thank you, Judge.

15   DEBTOR'S RESPONSE TO U.S. TRUSTEE'S COMMENTS RE RETENTION

16   MR. WORMS:  It was never contemplated by me that I

17 would bring claims against Mr. Karp on behalf of the Debtor.

18 My role, as I saw it, Judge -- and as I performed it to this

19 point -- is to litigate against the lift of the automatic stay

20 or the dismissal of the action.

21   And in fact, Judge, that's something that is of

22 concern to me because the state court action included the stay

23 that was obtained initially when there was a commercially and

24 reasonable attempt to sell the -- to foreclose on the property

25 is what I litigated previously, Judge.

In Re Hello Living Developer Nostrand LLC          14
June 27, 2022

1       And in fact, I do believe there are issues affecting

2  state law that needs to be considered by the Court before it

3  fully lifts the stay and allow for the sale.  Because we could

4  get back into the situation of additional motions either before

5  this Court or the state court, if the sale again becomes

6  commercially unreasonable.

7       The fact that the debt -- the Creditor is moving

8  forward, Judge, does not give any suggestion whatsoever that

9  this sale is commercially (inaudible) --

10      THE COURT:  Well, we're not arguing about the merits

11 of a sale or the automatic stay here; we're just arguing about

12 your retention.  So, to me -- again, I haven't looked at it --

13 it would seem to be pretty clear that what's needed is a clear

14 statement in a -- in written form about what you are going to

15 litigate, have been litigating, and what you are not litigate.

16      I -- I don't know if it's in there or not; I

17 apologize to the extent I'm raising something that's already

18 been addressed, but -- but based on the UST's comments, it

19 sounds like that's still an open issue.  And --

20      MR. WORMS:  (Inaudible)

21      THE COURT:  -- for something like that, there's

22 always the notion that -- that you need a -- a written record

23 and -- and statements on the -- formal statements are fine, but

24 they -- they are just sort of to -- to -- to sort of -- they

25 don't take the place of -- of -- of the appropriate record.

*American Legal Transcription*

1   So -- so, I would think that people -- you need to go

2   back, talk to the U.S. Trustee's Office, and -- and -- and work

3   with them on a statement about the scope of your

4   representation, and that that seems to be the -- the concern

5   that they have.  And we -- we hopefully get that buttoned up

6   the next time we chat.  So --

7   MR. BRODY:  Your Honor, if I may?

8   THE COURT:  Yeah.

9   LENDER'S RESPONSE RE RETENTION APPLICATION OF MR. WORMS

10   MR. BRODY:  Sorry for interrupting, Your Honor.  It

11   just seems like you were going on to something else.  Your

12   Honor, on behalf of the Nostrand Mezz Lender, Alan Brody,

13   Greenberg Traurig.

14   Your Honor, we continue our objection to Mr. Worms.

15   I just wanna make sure the record is clear; we continue our

16   objection to Mr. Worms' retention.  In addition to the fact

17   that it was just today that we received the supplemental

18   declaration that Mr. Worms had said at the last hearing, over

19   two weeks ago, he would -- he would send -- we just got it

20   today; so, I agree no decision should be made.

21   We are concerned, as the largest Creditor of this

22   estate, with what could be potentially a large deficiency

23   claim.  Based upon the evaluations we went through at a prior

24   hearing, we're very concerned that here we are, almost 2 1/2

25   months into the case, or even longer, and Mr. Worms has had

1  every opportunity to provide the sufficient declaration, and

2  it's taken this long.  And now he's asking for a nunc pro tunc

3  all the way back to the beginning.

4        At this point, Your Honor has heard the motion to

5  dismiss; Your Honor has heard the -- and -- and is fully

6  briefed on the motion for stay relief.  So if that's what Mr.

7  Worms is limited to, I don't see what it's necessary for him to

8  continue at this point.

9        And again, as the largest Creditor with a potential

10 deficiency, we don't think it's fair that we had to wait this

11 long for Mr. Worms to still have not put in the -- a sufficient

12 declaration, which is common in -- in this district to do -- to

13 -- to put -- to file a sufficient disclosure declaration.  And

14 he's going to seek an administrative claim for -- for whatever

15 amount, and we have no idea.  So, we object at this time, as

16 well.

17        MR. WORMS:  Your Honor --

18        THE COURT:  All right.  So --

19        MR. WORMS:  -- (inaudible) --

20        THE COURT:  -- so let me -- let me -- Mr. Worms, let

21 me -- let me jump in here, because I -- we -- I think we've

22 probably gone as far as we can go today on this topic.

23  COURT'S SUMMARY OF STATUS CONFERENCE AND NEW DATE SCHEDULED

24        So, several things.  One is I'm -- I am as frustrated

25 as anyone that it was filed today, which didn't give me a

1  chance to take a look at it; didn't give other stakeholders a

2  chance to take a look at it so that we could have a -- sort of

3  conversation to get to fully in the merits.  But be that as it

4  may, we can't do that today; it's just not appropriate.

5         I -- I've already had the lift stay argument in front

6  of me.  So, it's -- it's -- we're, you know, this is -- it is

7  what it is; right?  We -- we had an argument; we've had

8  hearings; we've had continued hearings.  And so, I'm -- I'm not

9  -- I just wanted to make it clear, I'm not signaling that I'm

10 sort of reopening anything to do anything.

11        I've already made a ruling.  And what I've done is

12 what bankruptcy judges often do, which is to try to walk the

13 line between the interest of the case and the interest of

14 Creditors, and -- and lifted the stay in part.  And so, people

15 need to understand what -- what's been done and what hasn't

16 been done.

17        And so, people want to talk about the fairness of

18 state court proceedings, you can do that in state court.

19 That's -- I'm not -- I'm not here to talk about how their

20 proceedings work or don't work.  I'm -- my -- the question in

21 front of me was about lifting the stay, and I've made a ruling.

22 And there's still more -- more for me to decide in terms of

23 lifting the -- the -- the final part of the stay.

24        And as to that, I asked Mr. Brody -- I'm glad he gave

25 the status of it -- I understand that it's not practical nor is

1  it wise to -- to wait 'til the very eve of -- of any final

2  event in state court to -- to -- to address the lifting of the

3  stay as to the entire proceeding.  And we can't actually -- it

4  doesn't work that way, there's too much uncertainty, and too

5  much of a cloud.

6          So what I would anticipate doing is given that we're

7  talking about 30 days, and that we're gonna have to get

8  together to talk about Mr. Worms's application in the not-too-

9  distant future, that I would think about two weeks makes sense

10 to have a -- a final hearing on -- on the lift stay, by which I

11 -- I say people give me status, and then I'll make a ruling.

12         I'm not here to re-argue it; that's not what we're

13 doing.  And people will just tell me if there's a status of --

14 of anyone making a deal, or not.  And that's pretty much what

15 -- what -- how this is gonna work.  So, I would think -- and

16 again, I -- I apologize to the extent that it results in a lot

17 of hearings.

18         You know, as you all know, from your prior

19 experience, that's often the way we do things to try to touch

20 base, move a case along, but at the same time, give everybody

21 an opportunity to be heard, maximum amount possibilities for --

22 for getting something done successfully in the case, while at

23 the same time, hear -- hearing everybody in terms of their

24 rights as interested parties.

25         So, since I think we're gonna have to deal with Mr.

1  Worms, and I want -- and Mr. Worms's application -- and I -- I

2  -- I would assume that there will be some written submission on

3  that, if Mr. Brody wants to do, that my thought would be to set

4  a date today for a written submission and for the next hearing.

5          And then that's the date at which I will hear an

6  update on any negotiations from other parties, or -- or

7  progress.  And then I'll -- I'll -- I'll make my ruling as to

8  the last part of the lift stay motion.  So, with that, Mr. Fox,

9  I didn't know if there's anything else that you had wanted to

10  address?

11          MR. FOX:  Your Honor, your -- you indicated there's

12  gonna be a -- a two-week a -- in two-weeks, about, a hearing

13  with respect to the determination of the lift stay.  My only

14  issue is I'm certainly willing to wait until then for my

15  comments and I would also like an opportunity to file papers

16  with respect to that determination.  And --

17          THE COURT:  What -- what -- (inaudible) file --

18          MR. FOX:  -- hopefully, there'll be --

19          THE COURT:  -- we've already --

20          MR. FOX:  -- a resolution.

21          THE COURT:  -- filed papers.  I already have lift

22  stay briefing.  I'm not --

23          MR. FOX:  Okay.

24          THE COURT:  -- I'm not re-doing the lift stay

25  briefing.

1          MR. FOX:  Okay.  Your Honor, we'll have an

2   opportunity to be heard on argument on that day?

3          THE COURT:  As to what --

4          MR. BRODY:  Your Honor --

5          THE COURT:  -- as to -- as to --

6          MR. FOX:  On -- on the merits --

7          THE COURT:  -- so, if there's a deal that's struck,

8   fine, we'll talk about it.

9          MR. FOX:  Right.

10         THE COURT:  And if there's some snafu in state court

11  that would affect the -- the timing where something that was

12  done by the state court, affected the -- the timing of how we

13  consider things here, that's fine.  But we -- we don't re-do

14  motions.

15         You wanna file a motion for reconsideration, you can

16  file a motion for reconsideration, but I'm not -- I'm not --

17  I'm not doing that.  And again --

18         MR. FOX:  (Inaudible)

19         THE COURT:  -- what -- what, Mr. Fox, what you're

20  opening up is the possibility that essentially I should never

21  lift the stay as to a part of the case, and not the whole case,

22  because I'm opening all of us up for continued ongoing

23  litigation on -- on the same motion.  And that's a horrible

24  idea, and if that's -- so the road to hell is paved with good

25  intentions.  So if my intentions are good in terms of trying to

1   do this, but they turn out to -- to have horrible collateral

2   consequences, frankly, I'll stop doing this at all, and I'll --

3   I'll lift the stay, or not lift the stay and -- and -- and

4   won't be so subtle about it.

5         But -- but what I -- what I am doing, you know, what

6   I thought I was doing was giving the parties a chance while the

7   Secured Creditor was allowed to go ahead with its rights,

8   giving the parties some -- some defined window to have a

9   conversation.  And -- and you can either take advantage of that

10  or not.

11        So, Mr. Brody?

12        MR. BRODY:  Thank you, Your Honor.  And, Your Honor,

13  I apologize.  I thought today -- I thought at the last hearing,

14  Your Honor said today was going to be the final hearing on the

15  stay relief.  So we thought that that was going to happen

16  today.

17        And we would still ask for that to happen.  Your

18  Honor's decision for -- for final stay relief certainly

19  wouldn't affect the parties' ability to continue to talk.

20  Again, our issue is as we market the property, and we talk to

21  potential bidders, they need to know that there actually is

22  stay relief.

23        So, we don't seem the harm to the Debtor.  We agree

24  this has been absolutely, fully briefed at this point.  We're

25  -- we're going forward based upon the order of Judge -- the

1  pre-petition order of Judge Marx -- which allowed for the sale

2  and set forth what was necessary to do for the marketing and to

3  get towards a sale, so we're fulfilling that promise.

4        THE COURT:  No.  I understand.  I -- I appreciate

5  that.  And so, I actually have to be in -- out of town for

6  meetings and a conference at the beginning of the week of the

7  11th.  So I'm gonna set this down for the 7th of July, so it's

8  less than two weeks; it's more like 10 days.

9        But again, I -- I do realize that I -- I said we were

10 going to address the -- the -- the motion.  I don't remember if

11 I used the exact words that it was gonna be the final hearing

12 or -- or something otherwise.  But I -- I understand that it

13 can't languish.

14        And again, sometimes judges think they're doing one

15 thing, and -- and it has collateral consequences.  So I -- I

16 appreciate that that -- that occurs.  But -- but I'm -- I -- I

17 made a ruling on the motion to lift the stay.  And so that

18 exists.

19        And again, I'm not hearing -- I'm not getting --

20 there's no reason for additional briefing; there's no reason

21 for additional argument.  So you either strike a deal, or you

22 don't.  And I'll address it on the 7th.  I would assume that

23 everybody could get in whatever written papers they want as to

24 Mr. Worms, any objection to that.  And we could hear it on that

25 date, unless it -- unless people want more time to do that.

1  So, I guess that's a question to address to Mr. Brody and --

2  and the UST?

3          Mr. Brody?

4          MR. BRODY:  Your Honor, that's sufficient time for

5  us.  May I request the afternoon?  I have a hearing before

6  Judge Kaplan in the morning.

7          THE COURT:  Yeah, that would be fine.  So let me make

8  sure I have my calendar up here.  So why don't we say 2:30?

9          MR. BRODY:  Thank you, Your Honor.

10         THE COURT:  And is that enough time for the UST?

11         MS. TIANTIAN:  Yes, it's enough time.  Thanks.

12         THE COURT:  So if the hearing is gonna be on July

13 7th, if -- if you can get whatever you're gonna get by say 5:00

14 on the 5th, and I'll -- I'll certainly hear anything that Mr.

15 Worms wants to say in response before -- or, you know, at -- at

16 the hearing.

17         What I certainly do encourage though -- obviously, is

18 to the extent that there are things that aren't sure about,

19 particularly as to the scope of what Mr. Worms is gonna do or

20 not, which seems to be something that's just a matter of

21 clarifying before we can know whether there's a dispute -- the

22 talk to each other before that.

23         Mr. Brody's issues, as he raised, may be more -- more

24 intractable, and -- and we'll -- we'll deal with that as -- as

25 needed based on the papers of and the discussions, so.

*American Legal Transcription*

1          All right.  Anything else from any other party?

2          COUNSEL:  (No audible response)

3          THE COURT:  All right.  We'll see you all on the 7th

4    at 2:30.  Thank you very much, and have a good afternoon.

5          MR. FOX:  Thank you, Your Honor.

6          MR. BRODY:  Thank you, Your Honor.

7          MR. WORMS:  Thank you, Judge.

8      (Proceeding adjourned at 2:33 p.m.)

9                          oOo

10                      CERTIFICATION

11     I, Catherine M. Griffin, certify that the foregoing

12   transcript of proceedings is a true and accurate record of the

13   proceedings.

14

15   _Catherine M. Griffin_          Date:  July 29, 2022

16   AMERICAN LEGAL TRANSCRIPTION

17   11 Market Street, Suite 215

18   Poughkeepsie, New York  12601

19

20

21

22

23

24

25